**In re EXPRESS AMERICA, INC., Debtor.**

**EXPRESS AMERICA, INC., Plaintiff,**

**v.**

**Ronald PIERCE, individually and d/b/a Master Movers, Defendant.**

Bankruptcy No. 90–2110–BM.
Motion No. 90–0919M.
Adv. No. 90–0525–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 10, 1991.

W. David Slomski, Kelson & Slomski, Pittsburgh, Pa., for defendant.

Martha J. Greer, Manion, McDonough & Lucas, P.C., Pittsburgh, Pa., for New Bank of New England, N.A.

Philip E. Beard, II, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, Pa., for Express America.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Several matters are before the court at this time. Express America, Inc. (hereinafter "debtor") alleges in Adversary No. 90–0525–BM that Ronald Pierce, individually and d/b/a Master Movers (hereinafter "defendant"), willfully violated the automatic stay provided for at 11 U.S.C. § 362(a) by collecting debtor's accounts receivable subsequent to the filing of the bankruptcy petition and by refusing to relinquish equipment in which debtor allegedly has a property interest. Debtor seeks an award of actual damages, including costs and attorney's fees, and punitive damages.

Defendant denies that he violated the automatic stay. He avers that the accounts receivable which he collected were not debtor's property. Also, defendant alleges that he has a perfected mechanic's

lien on the equipment at issue for repairs and storage charges incurred at debtor's request.

Defendant has filed a motion at 90–0919M in which he seeks a determination that his alleged mechanic's lien primes the perfected security interest which Bank of New England, N.A., (hereinafter "BONE") purportedly has in debtor's equipment. He also seeks relief from the automatic stay in order to foreclose on it. BONE denies that defendant has a mechanic's lien for repairs to and storage of debtor's vehicles which is prior to BONE's security interest.

As it is clear to the court that the accounts receivable were in fact property of the estate, and as it is equally clear that defendant is in violation of the automatic stay, judgment will be entered in favor of debtor and against defendant in the amount of $45,291.00 at Adversary No. 90–0525–BM.

Review of the law of the State of Tennessee convinces the court that defendant does not in fact qualify as a "mechanic" since he does not provide repair services to the public in the ordinary course of his business. To the contrary, defendant holds himself out to be and in fact is "an individual engaged in the business of transporting freight by motor carrier for hire". Any repair work engaged in by defendant is merely incidental to his main activity and is performed to maintain his own or his business-related motor vehicles.

As defendant's claim to a "garagekeeper's" lien directly relates to his lien for repairs, and as defendant is not in fact a "garagekeeper", defendant's prayer for relief must also fail.

Defendant has no claim to a mechanic's lien, has no right to retain possession of estate property, and has no right to relief from stay. If defendant has a claim at all, it is as an unsecured creditor who will receive distribution with other similarly situated creditors pursuant to an executed Order of Distribution.

–I–

## STATEMENT OF JURISDICTION

The parties stipulate that this court has jurisdiction over this action under Title 28 U.S.C. § 1334 and that this is a core proceeding under Title 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C. § 1409.

–II–

## FACTS

Debtor had been a licensed interstate common carrier and contract motor carrier since 1986. Defendant was an agent who solicited and transported freight on behalf of debtor.

On January 30, 1987, debtor and defendant executed a carrier-agent agreement (hereinafter "agreement"), wherein defendant agreed to solicit customers on behalf of debtor and to provide the power unit and driver to transport the freight. He either would drive his own truck to transport the loads or would arrange for someone else to transport them in their own vehicles.

Defendant was entitled to a commission as compensation "equal to 85% of the revenue billed for freight movements" with deductions for specified costs and expenses. He was required to submit a bill of lading designating debtor as the carrier in order to receive his commission.

In exchange for his agent's commission, defendant assigned to debtor his interest in any accounts receivable generated as a result of the movement of freight under the agreement. Defendant further agreed to indemnify debtor for all freight bills issued to customers which were unpaid after ninety (90) days from the date of the invoice. On those occasions when a bill had not been paid after 90 days, it was the parties' practice that defendant would call on the customer, obtain the payment, and forward it to debtor.

On December 11, 1987, debtor and BONE executed a credit agreement whereby BONE granted a line of credit in the amount of $1,000,000.00. Debtor was permitted to borrow up to eighty percent (80%) of the amount of its accounts receivable. As a precondition to its receiving the line of credit, debtor was required to grant BONE

a security interest in all of debtor's inventory, accounts receivable, contracts, intangibles, and specified equipment. BONE perfected its security interest on December 14, 1987 by filing financing statements as required by Pennsylvania law.

Late in 1989 or early in 1990, following an alleged fraud by another of debtor's agents, defendant, at the request of plaintiff, agreed to take possession of equipment belonging to debtor which it had leased to that other agent. Repairs needed to place the equipment back into revenue-producing service were performed by defendant at debtor's request. Payment for said repairs was transmitted by debtor to defendant.

At some point in time debtor began to experience financial difficulties. Several of the checks made payable to defendant in payment of his agent's commission were not honored by the bank between April and July of 1990. On July 13, 1990, debtor filed a voluntary Chapter 11 petition.

Shortly before the bankruptcy filing, debtor advised defendant of its financial status and introduced him to other carriers in an effort to assist him in finding someone else for whom he might serve as agent. At this meeting defendant removed backup documentation for many of debtor's unpaid accounts receivable from debtor's place of business and took them to his place of business in LaFollette, Tennessee.

On July 21, 1990, defendant became an agent for Enterprise Trucking Lines, Inc. (hereinafter "Enterprise") under terms and conditions which were substantially identical to those governing defendant's agency relationship with debtor. Also on July 21, 1990, defendant and Enterprise executed a document entitled "Loan Agreement". Said documents recited that defendant had presented to Enterprise $45,291.00 worth of freight invoices which he had booked or had caused to be hauled with his own equipment prior to July 21, 1990. Enterprise agreed to collect for the loads and to pay defendant eighty-seven percent (87%) of the gross revenues received. Enterprise further agreed to "lend" defendant $39,-408.00. This loan would be repaid in full

when Enterprise had received all monies due from the loads in question. Any amounts not collected within forty-five (45) days would be deducted from future commissions earned by defendant as agent for Enterprise.

Debtor and BONE entered into a Stipulation governing Continued Operations on July 31, 1990. BONE agreed to provide debtor with funds to continue operations. Debtor in return agreed to provide personnel to collect its accounts receivable for the benefit of BONE and agreed to assist BONE in centralizing and inventorying all of debtor's equipment. The Stipulation was approved by this court on August 14, 1990.

On October 25, 1990, debtor and BONE filed a Consent Motion For Relief From Stay which would permit BONE to exercise its rights in the accounts receivable and to sell debtor's equipment. The motion was granted by this court on November 14, 1990.

This bankruptcy case was converted to a Chapter 7 proceeding in December of 1990.

On March 15, 1991, New Bank of New England (hereinafter "NBONE"), successor to BONE, filed an Application For Writ Of Immediate Possession And Verified Complaint in state court in Tennessee. NBONE sought, *inter alia,* a Writ Of Possession directing that the equipment in defendant's possession be delivered to NBONE. It also sought a restraining order directing defendant not to damage, conceal, or remove the equipment.

An order was issued by the Tennessee state court directing that NBONE was entitled to immediate possession of the equipment, provided that NBONE secured a bond in the amount of $50,000.00 payable to defendant for his potential mechanic's lien interest. Said order further directed that the bond would be payable to defendant only upon a determination by this court that it be paid to defendant or that his lien interest should be determined by the state court.

–III–

## ANALYSIS

A.) *Adversary No. 90–0525–BM*

The filing of debtor's petition on July 13, 1990, operated as a stay, applicable to all entities, of any action to collect or to recover a claim against debtor that arose before the filing of the petition. *See* 11 U.S.C. § 362(a)(6).

Defendant did not receive its commissions for certain prepetition services performed by it under the agreement. Drafts issued between April of 1990 and July 13, 1991 to pay those commissions were returned by the bank. Defendant is entitled to these commissions and has a claim for them against debtor's estate. *See* 11 U.S.C. § 101(4).

The evidence presented at trial establishes that defendant took action after July 13, 1990 to collect on this prepetition claim that was in violation of 11 U.S.C. § 362(a)(6).

Defendant travelled to debtor's corporate office shortly before the filing of the bankruptcy petition and removed documentation relating to past shipments. In addition, defendant retained documentation relating to certain other shipments which had been hauled by defendant under the Agreement and were never forwarded on to debtor as was required under the Agreement. Defendant was aware that debtor was on the verge of bankruptcy and anticipated that he would not be paid his commission for those loads.

Defendant became an agent for Enterprise approximately one (1) week after debtor filed for bankruptcy. As part of his arrangement with Enterprise, defendant turned over to it accounts receivable in his possession totalling $45,291.00 which obviously had been generated pursuant to his agreement with debtor and for which he had not been paid his commission. Enterprise agreed to collect the accounts receivable and to pay defendant eighty-seven percent (87%) of what it collected. In addition, Enterprise advanced defendant $39,408.00 under the guise of a "loan" which would be repaid when it had collected the full amount of the accounts receivable.

Amounts not collected within forty-five (45) days were to be deducted from defendant's future commissions as agent for Enterprise.

■ Defendant argues that his actions were not violative of § 362(a)(6) because the accounts receivable turned over to Enterprise for collection were not property of debtor or its bankruptcy estate. This argument is without merit for several reasons.

■ To begin with, § 362(a)(6), unlike § 362(a)(2), (3), (4), and (5), makes no reference to debtor's property or to property of the estate. Any action taken by defendant with regard to these accounts receivable in an attempt to collect on a prepetition claim against debtor is in violation of § 362(a)(6), whether or not they are property of debtor or its bankruptcy estate. For instance, it is a violation of the automatic stay for a creditor in a consumer case to telephone debtors in bankruptcy to "encourage" them to repay notwithstanding their bankruptcy. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 342 (1977); *see also*, S.Rep. No. 989, 95th Cong., 2d Sess. 50–51 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Emphasis is placed on the objective of the action taken and not on whether the action is taken against property of the debtor or its bankruptcy estate.

Moreover, the accounts receivable at issue unquestionably are property of debtor's estate under the terms of the agreement.

What is and is not property of the estate is set forth at 11 U.S.C. § 541. In general, the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of commencement of the case". 11 U.S.C. § 541(a)(1). The scope of this provision is broad and ubiquitous. *See U.S. v. Whiting Pools*, 462 U.S. 198, 204 n. 9, 103 S.Ct. 2309, 2313, n. 9, 76 L.Ed.2d 515 (1983). All kinds of property are included. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–68 (1977); *see also* S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978).

The salient provisions of the agreement are set forth in paragraphs 6 and 7, notwithstanding defendant's disingenuous ar-

gument that he was not bound by same. To the contrary, all credible evidence convinces the court that the Agreement was duly executed, its terms understood, and that the parties complied with its provisions for a substantial period of time. Testimony to the contrary lacks credibility.

Paragraph 6 of said Agreement provided that defendant was to receive a commission equal to 85% of the revenue billed for freight movements, less certain specified costs. In paragraph 7, defendant transferred and assigned all of his "right, title, and interest in and to any and all sums of money now due or to become due from receivables created as a result of freight movements in accordance with the terms and conditions agreed to this assignment in exchange for commissions received (pursuant to paragraph 6)."[1]

An individual injured by a willful violation of the automatic stay shall recover actual damages, including costs and attorney's fees, and may recover punitive damages in appropriate circumstances. *See* 11 U.S.C. § 362(h).

■ Although § 362(h) speaks only of individuals as being entitled to damages for a willful violation of the automatic stay, a corporate debtor also may recover. *See In re Atlantic Business and Community Corp.*, 901 F.2d 325, 329 (3rd Cir.1990) (*citing Budget Service Co. v. Better Homes of Va.*, 804 F.2d 289, 292 (4th Cir.1986)).

■ Specific intent to violate the automatic stay is not required for a violation of the automatic stay to be willful. Section 362(h) mandates an award of damages upon a finding: (1) that the offending party knew of the automatic stay; and (2) that the action taken in violation of the automatic stay was intentional. A good faith belief by the offending party that it had a right to the property is not relevant to whether the act was willful or to whether compensa-

tion is to be awarded. *See In re Atlantic Business and Community Corp.*, 901 F.2d at 329 (*citing In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989)).

■ An award of actual damages is in order in this case. Defendant had knowledge of debtor's bankruptcy. He visited debtor's corporate office in July of 1990 and was informed that debtor would be filing. He also received notification of same a few days after it occurred. In addition, the actions taken in violation of the automatic stay unquestionably were intentional. Defendant deliberately undertook to satisfy a prepetition claim against debtor by collecting the estate's accounts receivable.

Debtor will be awarded actual damages of $45,291.00, the amount of the accounts receivable belonging to debtor which defendant turned over to Enterprise for collection. However, as no evidence has been offered indicating and/or liquidating costs and attorney's fees necessitated as a result of defendant's activities, no award can be entered at this time.

■ Pursuant to 11 U.S.C. § 362(h), punitive damages may be awarded when the conduct in violation of the automatic stay was in bad faith. *In re Atlantic Business and Community Corp.*, 901 F.2d at 320. Plaintiff merely requests that this court award it $10,000.00 but, again, provides an insubstantial basis for this particular amount. Certainly $10,000.00 is "a nice round number"; however, awards can not be entered based upon mere speculation.

Debtor also alleges in its complaint that defendant has refused to surrender certain vehicles belonging to debtor and claims that said refusal also violates that automatic stay. As little specificity was offered at trial, then little specificity can be contained in an Order. We do wish it to be made abundantly clear to the defendant that the

---

1. Defendant maintains that, under the above provisions, his right to an account receivable was extinguished only upon receipt of the commission earned on the freight movement which generated that account receivable. Careful reading of paragraphs 6 and 7 does not support this position. Defendant assigned his right to accounts receivable in exchange for his right to a commission. The right to an account receivable did not revert to defendant in the event he did not receive his commission. The right to the account receivable remained with debtor, regardless of whether defendant was paid his commission.

motor vehicles titled in debtor's name are in fact estate assets. Should it be learned that defendant has in fact retained possession of estate assets and/or is putting same to his personal use, then further action may be pursued in this court or other courts having criminal, as well as civil, jurisdiction.

### B.) *Motion No. 90–0919M*

Defendant alleges at Motion No. 90–0919M that he has a perfected mechanic's lien on debtor's equipment in the amount of $14,698.26 for repairs made to debtor's vehicles and a garage keeper's lien of $21,-408.00 for storage of debtor's vehicles. He requests a determination that his liens are prior to any interest that BONE has in the equipment and seeks relief from the automatic stay so that he might initiate foreclosure proceedings against the equipment.

Defendant took possession of certain vehicles and equipment from another party at debtor's request late in late–1989 and/or early–1990. At debtor's request, defendant made repairs to the vehicles so as to put them in running order and thereby use them in his operations. Debtor avers, and the court accepts as fact, that defendant was paid for said repairs.

 In addition, defendant does not qualify as a "mechanic" under Tennessee law so as to be entitled to a mechanic's lien. Tenn.Code Ann. § 66–19–101, provides in pertinent part as follows:

> Lien for repairs to conveyances generally—There shall be a lien upon any type of conveyance used in the transportation of persons or merchandise either by land or by water or through the air, propelled by any sort of power, for any repairs or improvements made or parts or fixtures furnished at the request of the owner, or his agent, in favor of the mechanic ... who makes on any such vehicle mentioned any repairs or puts therein any improvements, fixtures, machinery, or materials ...

A lien so created attaches to the conveyance and to any improvements therein, and continues for twelve (12) months after the repairs are made and until final decision on any suit that may be brought within that time for the debt. *See* Tenn.Code Ann. § 66–19–102.

In fact, defendant was not a mechanic as defined under Tennessee law. At all times defendant held himself out as "an individual engaged in the business of transporting freight by motor carrier for hire". The vast majority of repairs performed by defendant were to maintain the operating condition of his own vehicles. The small percentage of "other repairs" were performed on vehicles related to his own operations. Pursuant to their understanding, maintenance of motor vehicles such as plaintiff's was in fact defendant's obligation.

In addition, the evidence offered by defendant in support of this mechanic's lien lacks credibility. A detailed review of same indicates a curious chronology which is only eclipsed by the fact that the party to whom they are addressed did not exist at the time they allegedly were submitted. Said documentation is a sophomoric attempt to manufacture evidence in support of litigation. One need not be a "Cardozo" to reject it out of hand.

Thereafter, defendant avers that he stored plaintiff's motor vehicles so as to perfect and protect his mechanic's lien. As such, defendant concludes he could charge whatever amount he wanted for storage.

As has been shown, defendant had no mechanic's lien and accordingly, this tie/connection is without basis. In addition, it would be ironic if defendant could unlawfully withhold possession of assets from the rightful owner and receive as a reward a storage charge for said impropriety.

The court is advised that plaintiff has been required to post a $50,000.00 bond in the Tennessee Possessory Action to adequately protect defendant's mechanic's lien. As defendant has no right to a mechanic's lien, said protection is determined unnecessary and the state Order may be vacated and the bond returned to plaintiff.

For the reasons previously advanced, defendant has no basis to be relieved of the

automatic stay and certainly no basis to sell estate assets and keep the proceeds. Accordingly, said prayer for relief will be denied.