In re James Walter WARINER and wife, Cynthia Wariner, Debtors.

James Walter WARINER and wife, Cynthia Wariner, Plaintiffs,

v.

FIRST STATE BANK OF LIVINGSTON, Defendant.

Bankruptcy No. 481–00092.
Adv. No. 481–0104.

United States Bankruptcy Court,
N. D. Texas,
Fort Worth Division.

Dec. 3, 1981.

David Sweat, Arlington, Tex., for plaintiff.

Ted R. Widmer, Houston, Tex., for defendant.

## MEMORANDUM OPINION

JOHN FLOWERS, Bankruptcy Judge.

This case presents two issues for decision:

(1) Should the Defendant be punished for violating 11 U.S.C. § 362, the automatic stay provisions of the Bankruptcy Code?

(2) Did the note and security agreement executed by the parties violate the provisions of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and Regulation Z, 12 C.F.R. § 226.1 et seq., promulgated thereunder?

## VIOLATION OF THE AUTOMATIC STAY

The Plaintiffs, Mr. and Mrs. Wariner, financed the purchase of a pick-up truck through the Defendant bank which presently holds a valid lien on the truck to secure the unpaid loan balance. This loan was several months in arrears when Plaintiffs filed their petition under Chapter 13 of the Bankruptcy Code on February 18, 1981. Five days after the petition was filed, the bank president and his secretary had a phone conversation with Mrs. Wariner regarding the delinquency. The testimony as to what was said over the phone is in sharp dispute. Essentially, the bank president and his secretary testified Mrs. Wariner told them she and her husband intended to file a bankruptcy petition while Mrs. Wariner insists she told them the case was filed. All agree Mrs. Wariner told them the name and phone number of her attorney and it is undisputed she had a copy of the filed petition at the time of the phone conversation. The next day, the Bank repossessed the Plaintiffs' truck.

11 U.S.C. § 362 provides, in pertinent part, "... a petition filed under ... this title operates as a stay, applicable to all entities of—(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title ..." The truck was the Plaintiffs' property since it was properly exempted by them and repossession of it after the petition was filed clearly violated the automatic stay provisions.

Such actions are void *ab initio* whether the creditor acts with knowledge of the stay or not. *In re Miller*, 10 B.R. 778 (Bkrtcy.D. Md.1981); *In re Eisenberg*, 7 B.R. 683 (Bkrtcy.E.D.N.Y.1980). When a creditor violates the automatic stay knowing that a bankruptcy petition has been filed, the creditor acts in contempt. Formal notice of the bankruptcy is not required if the creditor has actual knowledge of it. *Eisenberg*, supra; *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir. 1976) *cert. denied* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977).

After carefully considering the evidence, I find that Mrs. Wariner told the Bank that the petition was filed. At .the time of the repossession, the Bank had actual knowledge of the filing and therefore acted in contempt of the automatic stay. This fact finding is not as critical as may appear at first blush since it is undisputed that after receiving written notice from the Plaintiffs' attorney that the bankruptcy was filed, the bank kept the truck for several months during which time the Plaintiffs suffered most of their damages. Retention of repossessed collateral is itself a violation of the stay, which, if done knowingly, is grounds for contempt. *In re Miller*, supra; *In re Endres*, 12 B.R. 404 (Bkrtcy.E.D.Wis. 1981). A creditor has an affirmative duty to return the property and restore the status quo once it learns its actions violated the stay.

The bankruptcy court's power to punish contempt is found in 28 U.S.C. § 1481 which provides, "A bankruptcy court shall have the powers of a court of equity, law and admiralty, but may not . . . punish a criminal contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment." [1] Defendant's contempt is civil and power to punish civil contempt is not limited by § 1481. Sanctions imposed for civil contempt are designed to compensate a plaintiff for all actual damages caused by the contemnor's actions. *In re Brooks*, 12 B.R. 283 (Bkrtcy.W.D.Mo.1981); *In re Reed*, 11 B.R. 258 (Bkrtcy.D.Utah 1981).[2] The Plaintiffs incurred $627.00 in damages as a result of the repossession. These are actual damages which Defendant is ordered to compensate. This figure includes car rental, Mr. Wariner's loss of work, and the greater cost of operating the car that Plaintiffs used in place of the repossessed truck. It does not include the repair and replacement costs necessary to make the second car operable. Those costs are salvageable by the Plaintiffs since the needed repairs made on the second car increased its value.

Plaintiffs also ask for court costs and attorney fees. Bankruptcy Rule 754 provides court ". . . costs may be taxed and judgment therefor rendered by the court." See *In re Brooks*, supra. The Advisory Committee notes state that the power to assess costs is discretionary with the court. See also 13 *Collier on Bankruptcy* ¶ 754.07 (14th ed. 1977). Costs will be assessed against Defendant here. As to attorney fees, no express provision is made for such awards in the Bankruptcy Code or Rules. The court awarded attorney fees in the case of *In re Brooks*, supra, based on the power of a federal court sitting in equity to award fees in exceptional cases where justice demands it.[3] Here the truck was not re-

---

1. Public Law 95–598, the current Bankruptcy laws, is comprised of four titles. Title II contains amendments to Title 28 of the United States Code. Section 241(a) of Title II includes 28 U.S.C. § 1481 upon which the bankruptcy court's contempt powers are based. Title IV contains the effective dates of the various bankruptcy provisions and § 405(b) of Title IV provides that amendments made by § 241 apply during the transition period.

2. Some courts have based recovery on theories of trespass or illegal possession rather than on compensatory sanctions imposed for civil contempt. See *General Motors Acceptance Corp. v. Miller*, 10 B.R. 74 (Bkrtcy.S.D.Ohio 1981) and *Springfield Bank v. Caserta*, 10 B.R. 57 (Bkrtcy. S.D.Ohio 1981). Both courts awarded actual damages plus attorney fees.

3. Other courts have awarded attorney fees and costs without discussing the reason for the award. See *In re Reed*, supra and *In re Edwards*, 5 B.R. 663 (Bkrtcy.M.D.Ala.1980). Contra see *In re Miller*, supra (costs awarded) and *In re Lewis*, 8 B.R. 132 (Bkrtcy.D.Idaho 1981).

turned until Plaintiffs' attorney wrote demand letters, instituted this action, and pursued several settings which were passed at Defendant's request. Defendant had ample opportunity to mitigate the Plaintiffs' losses and costs by returning the truck but did not avail itself of that opportunity. Attorney fees of $550.00 are awarded in this cause.

## THE TRUTH IN LENDING AND REGULATION Z CLAIMS

Plaintiffs contend that the loan instruments violate the disclosure requirements of the Truth in Lending Act (TILA) and more particularly, Regulation Z (Reg. Z). The fifth circuit requires strict compliance with the technical requirements of the TILA and Reg. Z in an effort to standardize disclosures so consumers can meaningfully compare available credit alternatives and make informed credit choices. *Smith v. Chapman*, 614 F.2d 968 (5th Cir. 1980); *Pennino v. Morris Kirschman & Co., Inc.*, 526 F.2d 367 (5th Cir. 1976). " . . . [O]nce the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability." *Grant v. Imperial Motors*, 539 F.2d 506, 510 (5th Cir. 1976).

■ There were two instruments executed at the time of the loan, a note and a security agreement. It is well settled that § 226.8(a) of Reg. Z requires all necessary disclosures to be made on one side of one instrument with certain exceptions not applicable here. See *Gennusco v. Commercial Bank and Trust Co.*, 566 F.2d 437 (3rd Cir. 1977); *Bulger v. Thorp Credit Inc. of Illinois*, 609 F.2d 1255 (7th Cir. 1979); *Gray-Taylor, Inc. v. Tennessee*, 587 S.W.2d 668 (Tex.1979). The one page requirement must be met even when the consumer actually understands the terms not disclosed because the standard for review is objective. *Smith*, supra. Documents cannot be incorporated by reference to comply with the TILA and Reg. Z requirements. *Smith*, supra; *Gennusco*, supra; *Bulger*, supra; and, *Gray-Taylor, Inc.*, supra. The security agreement involved does not contain many of the necessary disclosures including the payment and finance charge information required in § 226.8(b)(1)–(4). Since the note is the more complete of the instruments, I will consider the adequacy of the disclosures contained in it.

■ The note does not disclose necessary after-acquired property information.[4] Section 226.8(b)(5) of Reg. Z requires, in pertinent part, "If after-acquired property will be subject to the security interest . . . this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired." First, the note does not properly disclose that after-acquired property is subject to the security agreement. On the back of the security agreement, the Plaintiffs granted the Defendant an interest " . . . in . . . all proceeds, increases, substitutes, replacements, additions, accessions to the collateral . . . " This after-acquired property interest is not mentioned in the note. In *Gennusco*, supra, an interest in after-acquired property was mentioned in the note but not in the disclosure statement and the court held full disclosure was not made. I find the non-disclosure in the note of the after-acquired property interest violates § 226.8(b)(5).

Second, Plaintiffs argue that the after-acquired property disclosure is inadequate for failure to explain that no security interest attaches under an after-acquired property clause on consumer goods other than accessions unless the debtor acquires rights in them within ten days after the secured party gives value. Tex.Bus. and Com.Code § 9.204(b). The truck in question is a consumer item bought primarily for family or household use. Tex.Bus. and Com.Code § 9.109(1). Substitutes, replacements, addi-

The *Lewis* court expressly found there was no contractual or statutory right to attorney fees.

4. The Plaintiffs allege other inadequacies which do not need to be considered since one violation is sufficient to trigger full liability under 15 U.S.C. § 1640(a) and there are at least two clear violations present.

tions, etc. to the truck will also be consumer goods. Since there is no mention of the 10 day limitation in either the note or security agreement, Plaintiffs are led to believe by the terms of the security agreement that any after-acquired property is subject to Defendant's security interest regardless of when the property is acquired. Non-disclosure of the 10 day limitation is a failure to make a complete disclosure and a violation of § 226.8(b)(5). *Pollock v. General Finance Corp.*, 535 F.2d 295 (5th Cir. 1976); *Tinsman v. Moline Beneficial Finance Co.*, 531 F.2d 815 (7th Cir. 1976); *Casillas v. Gov't Emp. Credit Union of El Paso*, 570 S.W.2d 57 (Tex.Civ.App.—El Paso 1978, writ ref'd. n.r.e.)

One violation of Reg. Z is sufficient to trigger liability under 15 U.S.C. § 1640(a). Violating creditors are liable for actual damages caused by the non-disclosure, twice the amount of any finance charge with total liability not to exceed $1,000.00, court costs, and reasonable attorney fees as determined by the court. No actual damages are alleged. The note discloses a finance charge of $1,250.01 of which Plaintiffs may recover $1,000.00. Court costs and attorney fees of $450.00 are also awarded. These amounts are in addition to the $1,177.00 awarded for violation of the automatic stay.