**In re PIPER'S ALLEY CO., Debtor.**

**No. 86 C 9008.**

United States District Court,
N.D. Illinois, E.D.

Jan. 15, 1987.

Malcolm M. Gaynor, David N. Missner, Bruce A. Harwood, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for plaintiff.

Mark S. Lieberman, Karen Jackson, Rosenthal and Schanfield, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Debtor Piper's Alley Co. ("Piper's Alley") and contract purchaser Wells Street Inves-

tors, Inc. ("Investors") appeal from the decision by Bankruptcy Judge Robert Ginsburg (his September 30, 1986 Findings of Fact, Conclusions of Law and Order [collectively the "Order"], formalizing his oral findings, conclusions and order of September 27 [cited "Tr.—"]) refusing to reinstate the automatic stay or otherwise enjoin the Sheriff's sale of the real estate (the "Property") that initially formed Piper's Alley's entire bankruptcy estate. For the reasons stated in this memorandum opinion and order, Bankruptcy Judge Ginsburg's decision is affirmed.

### Facts [1]

In May 1986 the mortgage owned by Mutual Benefit Life Insurance Company ("Mutual Benefit") on the Property was in default in a number of major respects. Mutual Benefit obtained a judgment of foreclosure May 14, and the Sheriff's sale was set for noon June 19.

Piper's Alley signed a Real Estate Sales Contract (the "Contract") with Investors at the eleventh hour (both literally and figuratively)—just one hour before the scheduled Sheriff's sale. Piper's Alley immediately filed Chapter 11 proceedings, thus obtaining an automatic stay of the sale. But by its very terms the Contract was unconditional, subject neither to financing nor to the satisfaction of Mutual Benefit's mortgage: Investors (a shell corporation) took the risks of foreclosure of that mortgage. And the Contract set a closing date of September 22, something over three months after the date on which it was signed.

Piper's Alley and Investors somewhat inexplicably conducted an attempted early "closing" under the Contract at the beginning of August, by Investors' paying Piper's Alley substantially all the remaining equity over the mortgage (it will be recalled Investors had contracted to take the Property cum onere, subject to Mutual

Benefit's rights). When Mutual Benefit learned of the putative closing, it immediately brought the matter before the Bankruptcy Court. Judge Ginsburg found Piper's Alley had violated its fiduciary duties by the attempted closing, and he ordered the deeds and Investors' payments to be escrowed with Piper's Alley's attorneys.

At an August 13 hearing, conducted to consider Mutual Benefit's motion to lift the automatic stay because of the attempted "closing" and for other reasons, Investors' principal Philip Farley testified as to his awareness of the risks in the transaction, including:

1. the risk of loss of Investors' investment if Mutual Benefit's mortgage were not paid in full by the September 22 closing date under the Contract; and

2. Piper's Alley's right to perform the Contract simply by delivering marketable title to the Property with the Bankruptcy Court's approval, whether or not the mortgagee was paid.

At the conclusion of the hearing Judge Ginsburg entered an order lifting the automatic stay as of September 23, one day after the scheduled Contract closing date. That was not only the time period selected by the parties themselves two months earlier, but it also allowed ample time for performance at the Closing. It gave ample protection to Piper's Alley as debtor. It should be noted that by executing the Contract, Piper's Alley had really converted its bankruptcy estate into the equity provided by the Contract and not the Property itself, which had been the subject of unsuccessful sale efforts on the part of Piper's Alley for some two years before the Chapter 11 filing.

Nevertheless, immediately before the scheduled closing date Piper's Alley and Investors sought to amend the Contract to extend the closing to the end of January 1987. They then petitioned for an indefi-

---

**1.** This is not at all a full factual statement. For that purpose this Court adopts and confirms Judge Ginsburg's findings of fact as being in full accord with the evidence. All this opinion seeks to do is to state in skeletal form the factual

setting in which the case comes here. There is really no factual contest between the parties calling for a one-by-one restatement of Judge Ginsburg's findings, which are simply incorporated by reference here.

nite-period reinstatement of the stay. Following an emergency hearing on Saturday, September 27, Judge Ginsburg denied the motion to enjoin the foreclosure sale. To permit an appeal, Judge Ginsburg stayed the sale upon the condition that Investors promptly post $1 million in security. Investors timely posted such security in the form of a bank letter of credit.

So much, then, for the factual backdrop for the current appeal. This opinion turns to the grounds advanced by Piper's Alley and Investors for reversing Judge Ginsburg.

### Findings and Conclusions

■ Piper's Alley and Investors do not get off to an auspicious start. They claim Judge Ginsburg's order was in error simply because it included this statement:

> 3. All findings of fact herein that are deemed to be conclusions of law shall be additional conclusions of law, and all conclusions of law contained herein that are deemed to be findings of fact shall be additional findings of fact.[2]

That, they claim, "puts an untenable burden upon the reviewing court" (Appellants' Br. 12).

True enough, "[findings of fact] are subject to the 'clearly erroneous' standard, while [conclusions of law] are subject to independent *de novo* review" (*id.*). It is necessarily then the responsibility of the lower court to distinguish between the two categories to facilitate review. But one of the first things all of us learn in law school is that no bright line separates "fact" from "law"—a matter confirmed by the difficulties courts have in wrestling with such categorization (and perhaps as well by the familiar phrase "mixed questions of law and fact"). Casebooks are filled with decisions in which appellate courts have differed from trial courts—or higher appellate courts have differed from lower appellate courts—as to which of those two rubrics a particular matter falls under.

Judge Ginsburg is therefore understandably (and properly) cautious in this area. Indeed, he is not alone in his practice of specifically attaching "findings of fact" and "conclusions of law" labels to the different sections of his own determinations, but then adding the kind of precautionary statement quoted above—just to hedge the possibility a reviewing court might disagree as to the proper characterization of one individual item or another. This Court does exactly the same in the course of its most careful and detailed findings and conclusions (see, e.g., last week's advance sheet reporting of *Williams v. Lane,* 646 F.Supp. 1379, 1380 n. 1 (N.D.Ill.1986)).

In all candor, the Piper's Alley-Investors position must be viewed as near-frivolous. This case does not at all resemble the situation posed by *In re X–Cel, Inc.,* 776 F.2d 130, 133–34 (7th Cir.1985), in which the Bankruptcy Court had adopted in toto the submission by counsel for one of the parties as the Court's own purported findings and conclusions. There counsel's submission was impermissibly made in narrative form and contained a mixed bag, with each of the submission's two sections "contain[ing] factual statements" and with one of those sections "also includ[ing] invectives that would be highly objectionable in a judicial opinion" (*id.* at 134).

Little wonder that *X–Cel* reversed the Bankruptcy Court for its having failed to obey the mandate for separate findings and conclusions. Here, in contrast, there was no such "abdication of the judicial function" (*Scandia Down Corp. v. Euroquilt, Inc.,* 772 F.2d 1423, 1429 (7th Cir.1985), quoted in *X–Cel,* 776 F.2d at 134). Judge Ginsburg's findings and conclusions were careful, clearly set out and readily reviewable. Thus the first branch of the Piper's Alley-Investors appeal must be rejected.

### Feasibility

■ Next Piper's Alley and Investors challenge Judge Ginsburg's determination (Order ¶ 12) that "[t]he Contract is not feasible and thus cannot serve as adequate

---

2. That echoed Judge Ginsburg's statement at the September 27 hearing (Tr. 2), which he coupled with his statement that he regularly follows that practice.

protection to Mutual Benefit." What that challenge seeks to gloss over is that the challengers had the burden of demonstrating feasibility and simply did not meet that burden.

Judge Ginsburg's detailed and specific factual findings to support the determination of nonfeasibility are succinctly summarized at Appellee's Br. 10–11:

> The Bankruptcy Court found as matters of fact that the Chapter 11 case was filed to "hold off" the mortgagee; the buyer had made no progress in getting the deal closer to closing; it had made only limited inquiries to obtain financing; Mr. Farley was inexperienced and was involved in a deal far larger than he had ever transacted before; no documents or financial data were submitted to St. Paul or other lenders to ascertain feasibility; there was no evidence that any lender was seriously interested or that the Property would support the requested financing; there was nothing to indicate that Mr. Farley could close the gap between the requested financing and the purchase price; operational reports were lacking; adequate protection payments were late; the manager's bond was not produced; real estate taxes were eating up the equity cushion; feasibility was questionable and value was in doubt.

All those findings were plainly right—let alone their readily satisfying the lesser "not clearly erroneous" test.

Despite the three months Investors knew it had to close the deal when it signed the Contract, both through and past the closing date it had not pursued the matter in the expeditious and businesslike way any knowledgeable dealer or investor in such commercial properties would have done.[3] Its principal Farley—consistently with Investors' shell-corporation status—was looking for 100% financing of the $6.1 million purchase price. Not surprisingly, the witness who testified for St. Paul Federal Bank for Savings said its policy, even if the Property were found to qualify for and support a loan, was to lend no more than 80 to 85% of the purchase price. At the time of the hearing before Judge Ginsburg there was thus $1 million, more or less, that had to be bridged even if financing had been there—and it was unquestionably not.[4]

To be sure, Investors' principal Farley had $300,000 at risk at the time of the hearing. That 5% of the Contract price, however, did not itself make the Contract "feasible" in the sense of providing adequate protection to Mutual Benefit. Purchasers have lost earnest money in real estate deals before, and they will do so again. Nothing in Farley's performance after the Contract signing and before the hearing supported the notion that the Contract was "feasible" even in the sense contended for by Piper's Alley and Investors.

Moreover, it should be recognized Piper's Alley and Investors have blurred the issue by focusing on Investors' ability to obtain the entire purchase price. After all, what the Contract called for was Investors' assumption of the risks represented by Mutu-

---

**3.** Appellants' Br. 10 complains Judge Ginsburg's findings in that respect (Order ¶¶ 6–8; see also Tr. 4–8) are "completely inconsistent with the court's simultaneous finding that Wells Street was proceeding in good faith to obtain financing." That is a somewhat disingenuous characterization of the Judge's finding as to "good faith" (Order ¶ 6; see also Tr. 15):

> 6. Although the Debtor and Wells Street proceeded in good faith, since August 13, 1986 Wells Street has made no progress in closing the sale and made only superficial attempts to pursue the necessary financing to enable Wells Street to close the sale.

What Judge Ginsburg was obviously referring to was *subjective* good faith (the absence of the bad faith Mutual Benefit had urged was at work)—but Tr. 4–8 makes plain, by citing chapter and verse, that Investors' ineffectual efforts (however demonstrative of good faith) reflected a total delinquency in doing what should have been done to demonstrate feasibility. This is no different in concept from the other "good faith" demonstration described as "empty head, pure heart," which does not insulate litigants from Fed.R.Civ.P. 11 sanctions.

**4.** Testimony by the St. Paul representative did not support feasibility, even if Investors were to prove itself able to close the gap. Based on the evidence, Judge Ginsburg's Order ¶ 8 correctly found "St. Paul could [not] be regarded as seriously interested in financing the sale...."

al Benefit's mortgage. All the *debtor's* estate—the sole legitimate concern of the Bankruptcy Court—was entitled to was to receive the amount by which the $6.1 million Contract price exceeded the mortgage. At that point the debtor would have no justiciable interest in whether Mutual Benefit went to sheriff's sale or not. And that was exactly what the Contract called for.

Piper's Alley cannot have it both ways. If the Property value is indeed so clearly there—if its value *so* amply protects Mutual Benefit as secured creditor—Investors had plenty of opportunity to pay Piper's Alley the Contract price in excess of the mortgage, thus taking the Property out of the bankruptcy estate and rendering any further stay of the sale improper. That not having been done, it can scarcely be said Judge Ginsburg was clearly in error in finding Piper's Alley had not sustained its burden of showing adequate protection for Mutual Benefit, were it to be stalled any further in conducting its foreclosure sale.

### Hindsight

Next Piper's Alley and Investors urge this Court to second guess Judge Ginsburg because Investors (more accurately Farley himself) showed itself able and willing—*after* the Bankruptcy Court hearing—to post the $1 million letter of credit by way of security, on which Judge Ginsburg had conditioned a further stay pending this appeal. At least three reasons deprive that argument of any legitimate force.

■ First, this Court's role is to judge the sustainability of Judge Ginsburg's actions on the record before *him*, not on post-Order events. Just as it would be improper to measure this Court's actions on review in the Court of Appeals by the yardstick of matters never brought before this Court, so responsible jurisprudence demands the same kind of evaluation of Judge Ginsburg's decision by this Court in "clearly erroneous" terms. If Piper's Alley and Investors believed the posting of the letter of credit cast a different light on the questions before Judge Ginsburg, they should have gone to the Bankruptcy Court to seek reconsideration in view of the added facts. In that way this Court could apply proper review standards to what the Bankruptcy Court *did,* not to what it was not given the opportunity to do.

■ Second, what the letter of credit evidences is the willingness of Farley (and hence Investors) to buy time during the appeal—it does *not* show the feasibility of the ultimate transaction even in Investors' terms. Even were the $1 million letter of credit viewed as the equivalent of the missing gap-closer referred to in the "Feasibility" section of this opinion (and it is not), that would provide only one egg for the necessary six-egg omelette. Nothing shows the feasibility of the *rest* of the price—the assurance of the Property's value at the extended future date. There was nothing before Judge Ginsburg, and there is nothing here, to support the conclusion that the amount necessary to pay Mutual Benefit's mortgage in full and to avoid sale can be obtained from a lender—and even that question is really relevant in looking at matters from Investors' perspective (rather than Piper's Alley's, which is the only proper concern of the bankruptcy proceedings). There is no assurance in the letter of credit except another vote of confidence by Investors, which its prior performance has not shown to be a reliable indicator of feasibility on which the Bankruptcy Court was required to place reliance.

Third and relatedly, if Investors (again more accurately its principal Farley, for Investors has no assets except as it is capitalized for this deal) *does* have the degree of confidence in value it now urges to this Court, all it need have done is to close the deal by paying the equity to Piper's Alley and then taking *its* chances on the Property's value. That after all is precisely what the Contract required. Had Investors done so, Piper's Alley would have no stake in forestalling the sale and Mutual Benefit would have the benefit of the bargain it made—and so would Investors.

Second guessing of Judge Ginsburg's reasonable determination is impermissible here. Piper's Alley and Investors must lose in their attempted reliance on the post-decision facts as well.

### No Abuse of Discretion

■ Finally the litigants dispute somewhat the proper placement of the burden on Piper's Alley's motion to reinstate the automatic stay. They initially differed as to the applicability and application of *In re Bloomgarden*, 780 F.2d 657 (7th Cir.1985).[5] That quarrel is really beside the mark, for Appellants' Br. 18–20 seeks to argue the matter as though this Court were to look at the facts de novo. But quite to the contrary, as Appellants' Br. at 21 acknowledges:

> The decision whether to continue the automatic stay rests with the sound exercise of the Bankruptcy Court's discretion.

This Court cannot say the record reflected an abuse of that discretion. It was a reasonable and sound exercise of discretion for Judge Ginsburg to decide Mutual Benefit is not to be kept hostage while Investors continues to make efforts that (whatever subjective "good faith" those efforts may reflect) have not been at all meaningful or effective, and that have not been shown to carry any realistic promise of future effectiveness.

### Conclusion

Judge Ginsburg's factual determinations were certainly not clearly erroneous in any respect. His order refusing reinstatement of the stay of the sheriff's foreclosure sale was not an abuse of discretion—on the contrary, it was legally correct (applying de novo review to his conclusions of law). Accordingly the order of the Bankruptcy Court from which Piper's Alley and Investors have appealed is affirmed, and the stay pending appeal is vacated.

---

**5.** That difference now appears to have been resolved by the concession in Appellants' Reply Br. 4:

While Section 362 of the Bankruptcy Code was not strictly applicable to the September 27, 1986 hearing, the logic in *Bloomgarden* is.