**In re David C. BENNETT, Janet I. Bennett, Debtors.**

**Bankruptcy No. 2–90–06577.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Jan. 2, 1992.

G. Timothy Dearfield, Westerville, Ohio, for debtors.

Waymon B. McLeskey, II, Porter, Wright, Morris & Arthur, Columbus, Ohio, for Huntington Nat. Bank.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

## OPINION AND ORDER

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Preliminary Matters*

This matter is before the Court upon the Motion in Contempt of Court ("Motion") filed on July 5, 1991 by David and Janet Bennett ("Debtors"), the debtors in this Chapter 13 proceeding. The Motion requests that the Court hold Huntington National Bank ("Huntington") in contempt for Huntington's alleged violation of the automatic stay imposed by 11 U.S.C. § 362(a), and prays for compensatory and punitive damages. A Memorandum in Opposition was filed by Huntington on July 25, 1991; an evidentiary hearing was held on November 12, 1991. Following the close of evidence, it was agreed that the parties would file posthearing briefs in lieu of closing arguments.

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding which the Court may hear and determine in accordance with 28 U.S.C. § 157(b)(1) and (2)(A), (E), and (G). The following opinion and order constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052.

## II. *Findings of Fact*

The Debtors filed a joint petition for relief under Chapter 13 of the Bankruptcy Code on October 3, 1990. The accompanying schedules list Huntington as a claimant in the amount of $3,000, secured by a 1986 Honda Accord. Huntington filed a proof of claim on October 31, 1990, claiming a principal amount due of $6,105.02, and asserting a $9,975 value for the Honda. Huntington and the Debtors subsequently stipulated the value of the Honda at $5,000.

The Debtors encountered some difficulty in obtaining confirmation of their plan. Pursuant to the Court's notice and order of October 11, 1990, a confirmation hearing on the Debtors' plan was scheduled for December 11, 1990. On November 7, 1990, the Chapter 13 trustee filed his recommendation, noting numerous statutory impediments to confirmation of the plan. On November 19, 1990, an objection to confirmation was filed by a creditor. The confirmation hearing was convened on December 11, but continued to January 8, 1991, at the request of the Debtors and objecting creditor so that they would have additional time within which to resolve the objection.

The Debtors filed an amended plan on December 11, 1990. Although the objecting creditor thereupon withdrew its objection, the trustee's revised recommendation noted continuing impediments to confirmation. A hearing on confirmation was held on January 8, 1991. Confirmation was denied at that time due to the Debtors' failure to meet the confirmation requirements set forth in 11 U.S.C. § 1325(a) and to diligently prosecute their case. The Court, however, gave the Debtors an additional ten days to place the plan in a posture for confirmation; if no such action was taken, the case was to be dismissed.

No action was taken within the applicable time period and the case was dismissed on February 6, 1991. The Order Denying Confirmation and Dismissing Case ("Dismissal Order") was appended to a notice and mailed to all parties in interest on February 25, 1991. In the interim, the Debtors filed a motion to reconsider the Dismissal Order, asserting that all plan deficiencies had been cured and that the plan was in a posture to be confirmed. On February 27, 1991, the Court entered its Order Granting Motion for Reconsideration and Vacating Dismissal Order (hereinafter, "Order Vacating Dismissal"). A copy of the Order Vacating Dismissal was mailed to all parties in interest, including Huntington at 41 South High Street, Columbus, Ohio 43216, on March 12, 1991. An Order Confirming Chapter 13 Plan ("Confirmation Order") was entered by the Court on March 18, 1991.

The evidence adduced at the hearing also established that:

1. Huntington repossessed the Honda on March 31, 1991 by having the vehicle towed from the Debtors' driveway.

2. The Debtors' attorney, Timothy Dearfield, phoned the Huntington on April 1, 1991, and informed Erla VanScoy, a litigation specialist, of the Confirmation Order. VanScoy advised Dearfield that the Huntington would return the Honda when and if she [VanScoy] received a copy of such order. Dearfield mailed copies of the Order Vacating Dismissal and the Confirmation Order, which VanScoy received on April 3, 1991. The Honda was returned to the Debtors by Huntington later that day.

3. Mrs. Bennett serves under contract as a registered dietician for various health-care facilities in Ohio, Kentucky, and West Virginia. Mrs. Bennett was unable to travel to such facilities on March 31, April 1, and April 2, 1991, without possession and use of her Honda. Although the Debtors

own another vehicle, which was stored at a third party's residence, Mrs. Bennett's work records were in the Honda. Those records, consisting of patients' charts, were essential to the performance of her duties.

4. Mrs. Bennett lost six to eight hours of work at a rate of $34 per hour which she was to have performed in Huntington, West Virginia on March 31 and April 1, 1991. Mrs. Bennett planned to travel to Ripley, West Virginia to work the morning of April 1, then travel to Nelsonville, Ohio to work the afternoon and evening of April 1. The Nelsonville contract paid $34 per hour; the Ripley contract paid $32. Between the two facilities, Mrs. Bennett lost 14–16 hours of work. Both contracts were terminated as a result of Mrs. Bennett's absence on April 1. Eight hours of work at an undisclosed rate were lost on April 2.

5. Mrs. Bennett's work records were in disarray upon return of the Honda. This disarray caused her to be late in submitting reports to her various employers. The result was that Mrs. Bennett did not get paid for her work until May, instead of April.

The Debtors' posthearing brief requests $1,326 for loss of income, $1,000 for humiliation, unspecified attorney fees, and $5,000 in punitive damages.

### III. Conclusions of Law

A. 11 U.S.C. § 362(h)

■ At the moment a bankruptcy petition is filed, § 362 of the Bankruptcy Code takes effect, thereby providing for the stay of any and all proceedings against the debtor. The automatic stay's significance is echoed in the legislative history of § 362:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 595, 95th Cong. 1st Sess. 340–42 (1977); S.Rep. No. 989, 95th Cong. 2d Sess. 54–55 (1978); reprinted in 1978 U.S.Code Cong. & Admin.News 5787 at 5840 and 6296–97. Actions taken by creditors to collect from a debtor after the filing of a petition are void ab initio and of no legal effect. See Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1930); Borg–Warner Acceptance Corp. v. Hall, 685 F.2d 1306 (11th Cir.1982); Brockington v. Citizens and Southern Nat'l Bank of South Carolina (In re Brockington), 129 B.R. 68, 70 (Bankr.D.S.C.1991). Such actions are invalid even though a creditor has no notice of the bankruptcy case. Brockington, 129 B.R. at 70 (citations omitted); In re Steven W. Grose, P.C., 68 B.R. 847 (Bankr.E.D.Pa.1987).

■ The consequences of a willful violation of the automatic stay are set forth in § 362(h), which provides that:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

Hence, for an individual to recover damages for a violation of the stay, willfulness must be proven.

■ The case law suggests that the standard imposed by § 362(h) is less stringent than bad faith or maliciousness. See Crysen/Montenay Energy Co. v. Esselen Associates (In re Crysen/Montenay Energy Co.), 902 F.2d 1098, 1104–05 (2d Cir. 1990); Cuffee v. Atlantic Business and Community Dev. Corp. (In re Atlantic Business and Community Corp., 901 F.2d 325, 329 (3d Cir.1990)); In re Taylor, 884 F.2d 478, 482–83 (9th Cir.1989); In re Bloom, 875 F.2d 224, 227 (9th Cir.1989); Budget Service Co. v. Better Homes of Virginia, Inc., 804 F.2d 289, 292–98 (4th Cir.1986). See also In re University Medical Center, 125 B.R. 121, 128 (E.D.Pa. 1991). It has been stated that "any deliberate act taken in violation of a stay, which the violator knows to be in existence, justi-

fies an award of actual damages." *Crysen/Montenay*, 902 F.2d at 1105. *See also University Medical*, 125 B.R. at 125–28; *Perry v. Fifth Third Bank of Toledo (In re Perry)*, 124 B.R. 50, 51–52 (Bankr.N.D.Ohio 1990). Specific intent is not a prerequisite to a finding of willfulness. *Atlantic Business*, 901 F.2d at 329; *Bloom*, 875 F.2d at 227; *Express America, Inc. v. Pierce (In re Express America, Inc.)*, 132 B.R. 535, 540 (Bankr.W.D.Pa.1991). Restated, § 362(h) provides for damages if (1) the defendant knew of the automatic stay and (2) if the actions which violated the stay were intentional. *Brockington*, 129 B.R. at 70 (citations omitted).

 A lack of knowledge or notice of a bankruptcy case by a creditor means that his action was not willful, and, therefore, not contemptuous. *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir.1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *Anglemyer v. United States*, 115 B.R. 510, 514 (D.Md.1990); *In re Holman*, 92 B.R. 764, 768 (Bankr.S.D.Ohio 1988). Nonetheless, a creditor who has violated the stay without knowledge of the bankruptcy has an affirmative duty to restore the status quo without the debtor having to apply to the court for relief. *In re Stephen W. Grosse, P.C.*, 68 B.R. 847, 850 (Bankr. E.D.Pa.1987); *Matter of Clark*, 60 B.R. 13, 14 (Bankr.N.D.Ohio 1986). The moving party bears the burden of proof in an action for violation of the stay and must prove his case by clear and convincing evidence. *Brockington*, 129 B.R. at 70; *In re Zunich*, 88 B.R. 721 (Bankr.W.D.Pa.1988); *In re Wagner*, 74 B.R. 898 (Bankr.E.D.Pa. 1987).

 There is no dispute that Huntington intended to repossess the Debtor's vehicle. Thus, one of the prerequisites for a finding

of willfulness has been satisfied. The next issue is whether Huntington had knowledge of the automatic stay when it repossessed the Honda. Specifically, the Debtors must prove that Huntington had notice or knowledge of the reinstatement of the case. The Court finds that Huntington received the Order Vacating Dismissal and, therefore, had notice of the reinstatement of the case. Huntington, thus, willfully violated the automatic stay imposed by § 362.

 Federal Rule of Bankruptcy Procedure 9006(e) provides that service of notice by mail is complete upon mailing. "[T]he common law has long recognized a presumption that an item properly mailed was received by the addressee." *Bratton v. Yoder Co. (In re Yoder Co.)*, 758 F.2d 1114, 1118 (6th Cir.1985) (citing *Hagner v. United States*, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932)). *See also Torwico Electronics, Inc. v. State of New Jersey, Dep't of Envtl. Protection (In re Torwico Electronics, Inc.)*, 131 B.R. 561, 572 (Bankr.D.N.J.1991). The presumption arises upon proof that the item was addressed properly, had sufficient postage, and was deposited in the mail. *Yoder*, 758 F.2d at 1118 (citing *Simpson v. Jefferson Standard Life Insurance Co.*, 465 F.2d 1320, 1323 (6th Cir.1972)). *See also Matter of Euston*, 120 B.R. 228, 230 (Bankr. M.D.Fla.1990). However, the presumption of receipt is sufficiently rebutted by testimony of nonreceipt. *Yoder*, 758 F.2d at 1118.[1]

Huntington admits that it received written notice of the dismissal mailed on February 25, 1991 to the same address that the Order Vacating Dismissal was later mailed. The Court finds, upon the evidence and a review of the official court file, of which

---

1. The Court notes that *Yoder*'s holding that a denial of receipt rebuts the presumption of receipt is a minority view and has been criticized by a number of courts. *See, e.g., In re Longardner*, 855 F.2d 455 (7th Cir.1988), *cert. denied*, 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989); *In re Ricketts*, 80 B.R. 495 (9th Cir. BAP 1987); *Torwico*, 131 B.R. at 572–73; *In re Robintech*, 69 B.R. 663 (1987), *rev'd on other grounds*, 863 F.2d 393 (5th Cir.1989), *cert. denied*, 493 U.S. 811, 110 S.Ct. 55, 107 L.Ed.2d 24 (1989). *Yoder*'s rationale is subject to the following criticism: "If a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would become unraveled." *Torwico*, 131 B.R. at 573 (quoting *Ricketts*, 80 B.R. at 497).

the Court takes judicial notice, that the Order Vacating Dismissal was mailed to all parties, including Huntington, by the Clerk of the Bankruptcy Court through the Bankruptcy Automated Noticing System (BANS). The combination of these facts establishes a presumption that the Court mailed and Huntington received the Order Vacating Dismissal.

Huntington has not rebutted this presumption. While a litigation specialist and credit adjuster from Huntington testified that neither had received the Order Vacating Dismissal or notice thereof, such testimony does not establish nonreceipt by the Huntington. It only establishes, if credible, the lack of receipt of such notice and order by these two individuals. By their own testimony, these Huntington employees concede that mail is routed through several departments before it reaches them. There is no indication that Huntington did not receive the Order Vacating Dismissal within a reasonable time after it was mailed; such order simply may not have been routed to the individuals who testified. Thus, the Court finds that Huntington has not rebutted the presumption of receipt; it is presumed, therefore, that Huntington received the Order Vacating Dismissal. As such, Huntington had notice of the reinstatement of the bankruptcy case by mid-March 1991.

■ Having sustained their burden of proof with respect to the issue of notice, the Debtors have established an entitlement to damages. The final issue is the nature and extent of such damages. Although Huntington's actions were willful, they cannot be considered malicious. On the contrary, it is likely that the Order Vacating Dismissal was misrouted, misplaced, or simply lost in the crush of mail which a large banking association such as the Huntington receives each and every day. This offers little solace to the Debtors, whose car was repossessed even after their plan was confirmed, but provides some explanation for the action taken. This is not a case of blatant disregard for the automatic stay or order confirming a plan; it is a case where notice of a case's reinstatement was not routed within the bank to the proper personnel. It is also worth noting that Huntington's representative, VanScoy, had the vehicle returned as soon as she personally received notice that the case had been reinstated and the plan confirmed.

On these facts, the Court limits the monetary damages to the sum of $1,326, plus reasonable attorneys' fees. This represents the amount of lost income suffered by the Debtors as a result of the Honda's repossession. The Court declines to award punitive damages or damages for humiliation. Although § 362(h) authorizes an award of punitive damages "in appropriate circumstances," such circumstances do not exist in this case. As noted above, Huntington personnel caused the vehicle to be returned to the Debtors as soon as they personally were informed of the pendency of the case.

## B. 11 U.S.C. § 105(a)

■ Section 362(h) requires a showing of willfulness in order to recover actual damages for a violation of the automatic stay. However, attorneys' fees may be awarded where there is a "nonwillful," or inadvertent, violation of the automatic stay. *See, e.g., Underwood v. Delay (Matter of DeLay)*, 48 B.R. 282 (W.D.Mo.1984); *McLaughlin v. Fireman's Trust Mortgage Corp. (In re McLaughlin)*, 96 B.R. 554 (Bankr.E.D.Pa.1989); *In re Houchens*, 85 B.R. 152 (Bankr.N.D.Fla.1988); *In re Randy Homes Corp.*, 84 B.R. 799 (Bankr. M.D.Fla.1988); *AM Int'l, Inc. v. Tennessee Valley Auth. (In re AM Int'l, Inc.)*, 53 B.R. 744 (Bankr.M.D.Tenn.1985). The rationale for such an award has been stated as follows:

[I]n light of our analysis of the policies behind § 362(h), we believe that counsel for a debtor who is jeopardized in any significant manner by a stay violation and reasonably resorts to court to remedy the violation, should recover at least some measure of damages. Thus, the "injury" requirement should be very broadly construed. However, in saying this, we cannot forget the policy of dis-

78

couraging satellite fee litigation such as is before us. Litigation pursued, ... simply to ascertain parties' rights as to a creditor's actions which, while possibly important as a matter of policy, ... should not be awarded with attorneys' fees.

*McLaughlin,* 96 B.R. at 561–62.

 Although the courts awarding attorneys' fees often fail to state with specificity the statutory basis of such an award, the authority to make such an award absent a demonstration of willfulness appears to be found in § 105(a), which provides in pertinent part as follows: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Court determines that, even if willfulness on the part of the Huntington had not been found, § 105(a) would permit and justify it to award actual damages and attorneys' fees. It is clear that Mrs. Bennett lost several days of work, at established rates of pay, due to the repossession of her Honda. The Debtors thus incurred actual damages in the nature of lost income as a result of the vehicle's repossession. Thus, the Court's award of damages based on Huntington's violation of the automatic stay would be, and is, appropriate under § 105(a).

## IV. *Conclusion*

Based upon the foregoing, the Motion is hereby GRANTED in part. The Huntington shall immediately pay the sum of $1,326 to the Debtors as compensation for lost income. Although attorneys' fees also were requested, no specific amount was provided, probably because the amount was not yet ascertainable as of the hearing date. Therefore, the Court orders Debtors' counsel to submit an itemization of fees and expenses incurred in prosecuting the Motion within ten (10) days of the date of entry of this order. A copy of such itemization must be served on Huntington, which is provided seven (7) days to submit a response. The Court then will determine the exact amount of fees and expenses to be awarded in a separate order, without an actual hearing, unless such a hearing is

requested and deemed necessary. The requests for punitive damages and damages for humiliation are DENIED.

IT IS SO ORDERED: