**COMMERCIAL CREDIT CORPORATION,**
Appellant,

v.

**Michael REED and Julie Reed, Appellees.**

**No. 2:92–CV–140.**

United States District Court,
E.D. Texas,
Marshall Division.

April 29, 1993.

Lew Dunn, Longview, TX, for appellant.

Rodney S. Scott, Longview, TX, for appellees.

1. "Trans." refers to the transcript of the contempt hearing before the Bankruptcy Court

## OPINION AND ORDER

HALL, District Judge.

Commercial Credit Corporation ("CCC") has appealed from the order of the Bankruptcy Court finding CCC in contempt for violation of 11 U.S.C. § 362 and ordering that it pay the debtors, Michael and Julie Reed, $152.00 in actual damages and $750.00 in attorney's fees. After careful consideration of briefs and oral arguments by counsel, this Court reverses the Bankruptcy Court's decision.

### I. FACTUAL BACKGROUND

On Friday, April 17, 1992 at 1:52 p.m., Michael and Julie Reed filed a voluntary Chapter 13 petition. At the time of the filing, they were indebted to CCC in the amount of $5,167.67. The debt was secured by a security interest on a first lien on the Reeds' 1986 Pontiac Grand Am. At the time of the bankruptcy filing, the Reeds were two (2) months past due on their monthly payments to CCC.

CCC was not notified of the bankruptcy filing on Friday, April 17, 1992, nor on Monday, April 20, 1992. On Tuesday, April 21, 1992, having no notice of the bankruptcy, CCC took action to repossess the vehicle. CCC contracted with Smiddy's Wrecker Service to tow the car which was parked at Ms. Reed's place of employment. Smiddy's seized the car between 4:00 p.m. and 4:30 p.m. on April 21, 1992, and towed the car to its facility on Eastman Road in Longview, Texas. At approximately 4:45 p.m. that same day, Rodney S. Scott, the Reed's attorney, notified Jim Archer, the Branch Manager at CCC, that the Reeds had filed bankruptcy the previous Friday. The phone call constituted CCC's first notice of the bankruptcy. Scott demanded that Archer return the car to the Reeds immediately. The parties have stipulated that CCC had no notice of the bankruptcy filing until after the repossession occurred. Trans. at 2.[1]

which is a part of the record on appeal.

The events that occurred after Scott phoned Archer are in dispute. Archer claims that he called his supervisor in Lufkin who advised Archer to seek legal advice as to whether to release the car. Trans. at 53. Thereafter, Archer supposedly attempted to reach the company's general counsel in Maryland, but the office was already closed. He attempted to contact a couple of other attorneys who had already left their offices. Finally, around 5:30 p.m., he spoke with a paralegal in Houston who advised him to return the car. CCC submitted its long distance phone records as evidence at the contempt hearing. *See* CCC's Ex. C. Archer testified that he called Scott and told him that he would try to return the car that evening. Trans. at 54. Scott stated that he "[did] not recall [Archer] ever saying he would return the vehicle that evening." Trans. at 74.

Archer claims that he then called Smiddy's which had closed its office by that time. Archer testified that he left two messages with Smiddy's answering service which is supposed to forward calls to Mr. Smiddy or his girlfriend Jackie Cooper. Trans. at 56. Smiddy and Cooper testified that they never received any messages. Trans. at 28–29, 34–35.

The next morning, April 22, 1992, at approximately 11:30 a.m., Archer contacted Scott and advised him that the Reeds could pick up their car at CCC. Therefore, the Reeds were without the car for approximately 19½ hours. Approximately two and one-half months later, on July 8, 1992, the Reeds filed a motion for contempt against CCC for its alleged violation of the automatic stay by its repossession and retention of their vehicle.

After a hearing on the motion for contempt, the Bankruptcy Court made findings on the record and signed an order awarding the Reeds $152.00 in actual damages and $750.00 in attorney's fees. Trans. at 79–82; Order entered Sept. 21, 1992.

## II. DISCUSSION

### A. Scope of Appellate Review by the District Court

Appellate review and proceedings under the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101, et seq., as amended, by the Bankruptcy Amendments and Federal Judgeship Act of 1984, are governed primarily by 28 U.S.C. § 158. A District Court has jurisdiction to hear appeals from final judgments, orders, and decrees, and with leave of court, from interlocutory judgments, orders, and decrees of bankruptcy judges. 28 U.S.C. § 158(a).

A contempt order for violation of the automatic stay is considered to be appealable as a final order. *In re Ellis*, 66 B.R. 821 (N.D.Ill.1986).

On an appeal in a bankruptcy case, the District Court may affirm, modify or reverse a Bankruptcy Court's judgment, order, or decree, or remand with instructions for further proceedings. Bankr.Rule 8013.

In general, a party appealing from a Bankruptcy Court opinion may not raise issues on review that were not raised at the trial level. *In re Bear*, 789 F.2d 577 (7th Cir.1986); *In re Red*, 60 B.R. 113 (Bankr.E.D.Tenn.1986). Similarly, a District Court, acting as an appellate court in a bankruptcy case, may not consider an issue for the first time on appeal. *In re Commodity Exchange Services Co.*, 67 B.R. 313 (N.D.Tex.1986). However, the court may choose to address an issue if the argument may determine the outcome on appeal. *In re Vanasen*, 81 B.R. 59 (D.Or. 1987).

A District Court, acting as an appellate court in a bankruptcy case, may consider only evidence which was presented before the Bankruptcy Court and made part of the record. *In re Bartlett*, 92 B.R. 142 (E.D.N.C.1988). The District Court will review an order of a Bankruptcy Court on the record before that court, not on postorder events. *In re Piper's Alley Co.*, 69 B.R. 382 (N.D.Ill.1987). An appellate court has no power under Bankruptcy Rule 8013 to take additional evidence in connection with the review of Bankruptcy Court decisions, and where the Bankruptcy Court's findings of fact are not sufficiently clear or complete to support review, the

appellate court will remand the matter for additional findings. *In re Neis*, 723 F.2d 584 (7th Cir.1983). Thus, a District Court may not determine a fact question on appeal where the Bankruptcy Court has not made such a factual finding; the proper procedure by the District Court in such a situation is to remand for a factual finding. *In re Edward M. Johnson & Assocs., Inc.*, 845 F.2d 1395 (6th Cir.1988); *In re Thompson*, 788 F.2d 560 (9th Cir.1986).

■ A Bankruptcy Court's findings of fact, whether based on oral or documentary evidence, may not be set aside unless clearly erroneous, and due regard must be given to the Bankruptcy Court's opportunity to judge the credibility of witnesses. Bankr. Rule 8013. The clearly erroneous rule applies most strongly to matters on which conflicting testimony has been presented— where the bankruptcy judge has been required to assess the credibility of the witnesses—and a Bankruptcy Court's assessment of witnesses usually will not be held to be clearly erroneous. *Yaquinto v. Greer*, 81 B.R. 870 (N.D.Tex.1988).

■ Unlike findings of fact, no presumption of correctness attaches to the Bankruptcy Court's conclusions of law, which are subject to independent determinations by a reviewing court. *In re Missionary Baptist Found., Inc.*, 712 F.2d 206 (5th Cir.1983). Review by an appellate court of Bankruptcy Court conclusions of law is *de novo*. *In re Consolidated Bancshares*, 785 F.2d 1249 (5th Cir.1986). Further, the appellate court is not required to accept a Bankruptcy Court's conclusions as to the legal effect of findings of fact, which is also subject of *de novo* review. *In re Owen*, 86 B.R. 691 (M.D.Fla.1988), *aff'd on recons.*, 961 F.2d 170 (11th Cir.1992).

### B. The Automatic Stay of § 362

Section 362 of the Bankruptcy Code generally provides for the automatic stay of any and all proceedings against the debtor. The stay becomes effective upon the filing of the bankruptcy petition. This provision specifically prohibits many acts to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. 11 U.S.C. § 362. The automatic stay's importance is echoed in the following oft-quoted portion of the legislative history of § 362:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 340–342 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 54–55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787 at 5840, 6296–97.

■ The consequences of violating the automatic stay provisions of § 362 are set forth in § 362(h) which provides that:

> [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

In the Fifth Circuit, actions taken in violation of an automatic stay are *voidable*. *Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir.1990); *Sikes v. Global Marine, Inc.*, 881 F.2d 176 (5th Cir. 1989). Such action are voidable even though the creditor had no notice of the bankruptcy filing. *See, e.g., In re Lile*, 103 B.R. 830, 836 (Bankr.S.D.Tex.1989); *In re Holman*, 92 B.R. 764, 768 (Bankr.S.D.Ohio 1988).

■ Without question, CCC's act of post-petition repossession of the Reed's car constituted a violation, albeit it an inadvertent violation, of the automatic stay. *See In re Wariner*, 16 B.R. 216 (Bankr. N.D.Tex.1981). However, the initial violation done without notice of the bankruptcy, cannot be considered willful nor contemptuous. *See, e.g., In re Hailey*, 621 F.2d 169 (5th Cir.1980); *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir.1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *Homer Nat'l Bank v. Namie*, 96 B.R. 652

(W.D.La.1989); *In re Endres*, 12 B.R. 404 (Bankr.E.D.Wis.1981).

It is CCC's retention of the vehicle following notification of the bankruptcy which the Bankruptcy Court apparently found to be a willful violation of § 362(h). That retention is the dispositive issue in this appeal. CCC appears to address the issue in Points I and V of its brief. In Point I, CCC argues that the Bankruptcy Court erred in ruling that CCC had no right to confer with legal counsel regarding its violation of the automatic stay. In Point V, CCC asserts that the Bankruptcy Court erred in applying a strict liability standard to CCC's conduct.

### C. Creditor's Duty to Restore Status Quo

 A refusal or failure to take action may constitute an act within the scope of the automatic stay; thus, an entity which has violated the stay has an obligation to restore the status quo by undoing its previous action and preventing the continuation of the consequences of the stay violation. *Wariner*, 16 B.R. at 218. An entity's failure to comply with its duty to restore the status quo and undo its previous actions which violated the stay may constitute a willful violation of the stay.

 As stated by the Bankruptcy Court in *Holman*, "The cases are legion which hold that a creditor who retains lawfully repossessed collateral after receiving notice or actual notice of the pendency of a bankruptcy case has engaged in conduct that is contemptuous." 92 B.R. at 768. The case law indicates that a creditor must act *immediately* to restore the status quo once it learns that it has violated the stay. *Id.* at 769 (emphasis added).

As indicated above, in awarding damages to the Reeds, the Bankruptcy Court apparently determined that CCC had willfully violated the stay by its failure to act quickly enough to return the Reed's car. The Bankruptcy Court stated the following on the record:

> However, the fact of the matter is that it is a violation of the automatic stay for one to retain property that is property of the bankruptcy estate once one has been notified of the bankruptcy estate. The only proper action at that point to rectify a post-petition seizure, as I understand the jurisprudence, is immediate return of matters to the status quo. I do not think that it is satisfactory to argue that the creditor took reasonable steps to find out his situation. The creditor, Commercial Credit Corporation, is in the business of lending money. Commercial Credit Corporation does this for a living. They shouldn't have to find out their status; they should know their status. The only thing they should have to find out is whether or not there is, in fact, a bankruptcy filed. There was no doubt, once they were contacted by Mr. Scott's office, that a bankruptcy had been filed, and the only appropriate response at that point was immediate relinquishment of the vehicle with no further discussion concerning the rights of the parties because the rights are clear.

Trans. at 79–80. The legal conclusions of the Bankruptcy Court are subject to a *de novo* review by this Court.

CCC argues in its brief that it acted reasonably to restore the status quo. Although CCC cites no caselaw for the proposition that reasonable behavior is a defense to willful violation, there are cases which support that concept. In *In re Carlsen*, 63 B.R. 706 (Bankr.C.D.Cal.1986), the IRS failed to return funds received pursuant to a levy after receiving notice of bankruptcy. The *Carlsen* court added a reasonableness element to the creditor's duty to immediately release property of the estate lawfully obtained. Specifically, the court stated:

> It is incumbent upon the creditor to release its lien without delay as soon as it is aware of the bankruptcy and of the legal effects of that bankruptcy. Naturally this Court would not chastise a creditor for seeking legal counsel before it acts. But any delay in obtaining that legal advice is unwarranted and a violation of the stay.

*Id.* at 710. The above statement concerning legal advice is particularly relevant to the present case where Mr. Archer spent

less than one hour seeking advice about whether to release the car.

In another California case, *In re Abrams*, 127 B.R. 239, 243 (Bankr. 9th Cir.1991), a Bankruptcy Appellate Panel cited with approval the reasonableness standard articulated in *Carlsen*. In *Abrams*, a lessor without knowledge of the debtors' bankruptcy caused the post-petition repossession of the debtors' leased automobile. As in the present case, the lessor in *Abrams* received notice of the bankruptcy the day of the repossession. *Id.* at 240. Unlike the instant case, the *Abrams* creditor refused to return the vehicle when it received notice and did not return the vehicle for many days. *Id.*

Finally, in another post-petition car repossession case in which the vehicle was not returned to the debtors until eleven days after the repossession and after the debtors were forced to file a request for preliminary injunction, the Court found the creditor in contempt and berated the creditor for making only one phone call to attempt to rescind its directive to repossess the car. *In re Shiko*, 21 B.R. 203 (Bankr. M.D.Penn.1982). The *Shiko* court stated:

> The Bank made only one apparent attempt, a phone call, to rescind its directive to Stiely to repossess debtor's vehicles [after receiving notice of the bankruptcy]. That attempt was neither a sufficient nor a *reasonable* effort under the circumstances. We conclude that the defendants were in contempt of the automatic stay and the debtors are entitled to their actual damages.

21 B.R. at 204 (emphasis added).

There are numerous other cases addressing the failure of creditors to return a vehicle after receiving notice of a bankruptcy filing. However, the cases are factually distinguishable from the instant case in that the creditors clearly acted unreasonably by failing to return the vehicles until after the passage of several days and/or after they were ordered by the courts to do so. *See, e.g., In re Miller*, 22 B.R. 479 (D.Md.1982) (creditor kept car for at least four days and took no action to return vehicle on the day on which notified of the

bankruptcy); *Holman*, 92 B.R. at 767 (creditor retained car for almost one month); *In re Clark*, 60 B.R. 13 (Bankr. N.D.Ohio 1986) (creditor kept car for over one month); *Wariner*, 16 B.R. at 218 (creditor kept vehicle for several months).

*In re Bennett*, 135 B.R. 72 (Bankr. S.D.Ohio 1992), is a case which presents a somewhat similar factual situation to the present case insofar as the creditor's retention is concerned. The creditor in *Bennett* held the car for three days and promptly returned it as soon as the supervisor received personal, written notice of the bankruptcy. *Id.* at 77. However, *Bennett* is easily distinguished because the creditor had received notice *pre*-petition although the notice had apparently been misrouted within the creditor's office. *Id.* In the present case, CCC received absolutely no notice of the bankruptcy until after 4:00 p.m. on the day of the repossession. Furthermore, CCC acted on the oral notice from Mr. Scott.

The Court is persuaded by the cases which add the element of reasonableness to the creditor's duty to immediately restore the status quo. The Court is further satisfied that CCC made all reasonable attempts to immediately restore the status quo.

CCC raises four other points of error in its brief, none of which have merit. As previously mentioned, Points I and V both appear to address the issue of whether CCC fulfilled its obligation to immediately restore the status quo which is discussed at length above.

In Point II, CCC argues that it did not receive proper notice of the contempt hearing as required by Bankruptcy Rule 9020(b). The sufficiency of the notice will not be addressed by this Court as CCC failed to object at the contempt hearing and, thereby, waived any objection as to the notice issue on appeal.

In Point III, CCC claims that the Bankruptcy Court committed jurisdictional errors. The Court finds that the Bankruptcy Court clearly had jurisdiction over the proceeding.

In Point IV, CCC asserts that the contempt should have been resolved in an adversary proceeding. An adversary proceeding is not required for a contempt hearing. Furthermore, CCC made no objections at the hearing; therefore, any objections on appeal have been waived.

Finally, in Point VI, CCC argues that the Bankruptcy Court erred as a matter of law in refusing to sanction the Reeds and award CCC attorneys' fees for having to defend what CCC considered to be a vexatious and harassing proceeding. The Court finds that the record below was not sufficiently developed to determine that the Reeds should be sanctioned. Furthermore, as indicated above, there was a violation, albeit a technical and inadvertent violation, of the automatic stay. Therefore, the Court finds that there was a legal and factual basis for the Reeds' bringing the contempt action. Nevertheless, the Court finds that CCC's behavior was not contemptuous nor sanctionable.

### III. CONCLUSION

After careful deliberation, the Court finds that CCC acted reasonably to immediately restore the status quo upon receiving notice of the Reeds' bankruptcy filing. Therefore, CCC's actions were neither contemptuous nor sanctionable. Accordingly, the Court reverses the order of the Bankruptcy Court.

IT IS THEREFORE ORDERED that the ruling of the Bankruptcy Court is hereby REVERSED.