In re Leonard E. SMITH, Debtor.

**MITCHELL CONSTRUCTION CO., INC., Plaintiff,**

v.

**Leonard E. SMITH, Defendant.**

**Bankruptcy No. 93–63431.
Adv. No. 93–6790.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

April 6, 1995.

Robert Fleming, Smith & Fleming, Atlanta, GA, for plaintiff.

Frank B. Wilensky, Macey, Wilensky, Cohen, Wittner & Kessle, Atlanta, GA, for defendant.

## ORDER

MARGARET H. MURPHY, Bankruptcy Judge.

Before the court are (1) Debtor's motion in the main case for imposition of sanctions against Mitchell Construction Company, Inc. ("Mitchell") and its attorney, David Rutherford, for willful violation of the automatic stay of 11 U.S.C. § 362(a); and (2) Debtor's motion to dismiss as untimely the adversary proceeding filed by Mitchell. The issue central to both motions is when Mitchell received actual notice of the filing of Debtor's Chapter 7 bankruptcy case.

Mitchell is a creditor of Debtor as a result of a state court judgment obtained by default May 14, 1992. After entry of the judgment, Mitchell, through its attorney David Rutherford, served Debtor with postjudgment interrogatories. When Debtor failed to respond to those interrogatories, Mitchell filed a motion to compel November 3, 1992. Unknown to Mitchell, because Debtor had not listed Mitchell as a creditor, Debtor had a Chapter 13 bankruptcy case pending at the time the motion to compel was filed and at the time the order granting the motion to compel was entered February 4, 1993.[1] The Chapter 13 case was dismissed[2] shortly thereafter, February 18, 1993, and Debtor then filed the instant Chapter 7 case March 3, 1993. In Debtor's Chapter 7 Statement of Financial Affairs, item 4, Debtor disclosed the lawsuit[3] but failed to list Mitchell as a creditor in either his schedules[4] or on the mailing matrix.[5] Therefore, Mitchell received no written notice of the filing of the instant case or of the bar dates for filing complaints objecting to discharge or to determine dischargeability.[6]

---

1. Mitchell concedes that this February 4, 1993, order on the motion to compel is void as it was entered in violation of the automatic stay while Debtor's prior Chapter 13 case was pending. *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306 (11th Cir.1982).

2. Pursuant to 11 U.S.C. § 349, dismissal does not bar discharge in a later case and does not bar filing a subsequent case, except as provided in 11 U.S.C. § 109(g). Additionally, dismissal reinstates transfers and liens avoided under certain provisions of the Bankruptcy Code, vacates transfers ordered under certain other provisions of the Bankruptcy Code, and revests property of the estate in the entity in which such property was vested on the date the petition was filed.

3. The lawsuit is shown as "CONSOLIDATED ELCTRIC (sic) SUPPLY, INC, DEBTOR ET AL., DEKALB SUPERIOR COURT, # 91–9702–9." The lawsuit is described as "pending." Debtor did not disclose that a default judgment had been entered against him.

4. Bankruptcy Rule 1007 requires a debtor to file schedules of assets and liabilities, a schedule of current income and expenditures, a schedule of executory contracts and unexpired leases, and a statement of financial affairs (known generally as the "Schedules"). If those Schedules are not filed with the petition, they must be filed within 15 days thereafter.

5. Bankruptcy Rule 1007(a)(1) requires Debtor to file a list of names and addresses of creditors unless the petition is accompanied by a schedule of liabilities. BLR 715–1(e), NDGa. requires every debtor to file with the petition a list of all creditors and their addresses in a mailing matrix format, which facilitates and expedites noticing of creditors. If a creditor is not included on the mailing matrix, that creditor *will not* receive notices directed to creditors and served by the Bankruptcy Clerk.

6. In all voluntary Chapter 7 bankruptcy cases, the Clerk, U.S. Bankruptcy Court, serves a "Notice of Commencement of Case Under Chapter 7 of the Bankruptcy Code, Meeting of Creditors, and Fixing of Dates" upon all creditors listed on Debtor's mailing matrix. That notice contains information regarding the Debtor, Debtor's attorney, and the Trustee; sets forth the date of the 11 U.S.C. § 341(a) meeting of creditors and the bar dates for filing claims and complaints objecting to discharge or to determine dischargeability; and provides brief but important information regarding the effect of the automatic stay. If, as in the instant case, the case is a "no-asset" case

On April 7, 1993, as a result of Debtor's failure to respond to the state court order compelling postjudgment discovery, Mitchell filed a motion for contempt. A hearing on the motion for contempt was scheduled for Wednesday, June 2, 1993 (Monday, May 31, 1993, was the Memorial Day holiday). On Friday, May 28, 1993, Debtor contacted Mitchell's attorney by telephone and by telefacsimile (hereinafter referred to as a "fax") to notify him that Debtor was currently protected by the automatic stay of 11 U.S.C. § 362(a) as a result of his pending Chapter 7 case. The document which Debtor faxed to Mitchell's attorney and to the state court judge, however, was a notice from Debtor's prior Chapter 13 case (dismissed in February, 1993) and, therefore, contained an incorrect case number.[7]

After contacting the state court judge, Mitchell's attorney sent a message by fax to Debtor June 1, 1993, to inform Debtor that the state court judge intended to go forward with the contempt hearing. Late in the day after 5:00 p.m. on June 1, 1993, Debtor visited his attorney, Milton Jones,[8] to show Mr. Jones the letter faxed from Mitchell's attorney.

Later on June 1, 1993, at approximately 6:00–7:00 p.m., Mr. Jones telephoned the offices of Mitchell's attorney. A senior associate, Mr. Weber, answered the phone, announcing that David Rutherford, the attorney handling Mitchell's case, was not in the office. A conversation ensued. Mr. Jones testified that it is his habit and practice in similar situations to provide to a creditor's attorney the following information:

    a.  his name and telephone number;

    b.  the debtor's name;

    c.  the fact that a Chapter 7 or Chapter 13 case had been filed;

    d.  the case number of the bankruptcy case filed;

    e.  the date of filing; and

    f.  information regarding the automatic stay.

Mr. Jones further testified that it was not his habit and practice to send copies of bankruptcy petitions to creditors and it was not his habit and practice to file pleadings, such as Pleas of Bankruptcy, in pending state court cases. Debtor testified he overheard Mr. Jones' end of the conversation and heard Mr. Jones identify himself and Debtor and heard Mr. Jones discuss the nature and extent of the automatic stay.

The associate attorney, Mr. Weber, to whom Mr. Jones spoke recalls only that Mr. Jones seemed to be in a hurry and that Mr. Jones informed him that Jones had a conflict and could not attend the next morning's hearing. Mr. Weber thought it unusual for an attorney to call so late in the day about a conflict for the next morning's hearing. Mr. Weber testified that if any more specific information, such as a case number, had been provided, he would have prepared a written memorandum of such information. Mr. Weber testified he attempted to contact Mr. Rutherford at home but was unable to reach him. Mr. Rutherford confirmed that he had a telephone answering machine which was in working order. Mr. Rutherford testified he received no message about Mr. Jones' conflict or about Debtor's bankruptcy. Mr. Rutherford testified he was not even aware that Mr. Jones had called until after Mr. Jones filed his affidavit April 21, 1994, ten months later.

Mitchell's attorney attended the contempt hearing June 2, 1993. Neither Debtor nor an attorney for Debtor appeared at that hearing. The state court judge, having received a fax from Debtor regarding a pending bankruptcy case, instructed Mitchell's attorney to investigate and report regarding Debtor's bankruptcy status. Mitchell's attor-

---

(i.e., a case in which the Trustee expects that no non-exempt assets exist for liquidation and distribution to creditors), the notice contains no bar date for filing proofs of claim and instructs creditors that filing a proof of claim is unnecessary.

7.  The faxed document, entitled "Notice of Commencement of Case Under Chapter 13 of the

Bankruptcy Code, Meeting of Creditors and Fixing of Dates" (commonly known as the "341 Notice") also provided Debtor's Social Security number.

8.  Mr. Jones is no longer acting as Debtor's attorney. A Certificate of Consent allowing Mr. Jones to withdraw was filed January 26, 1994.

ney called the Chapter 13 Trustee's office.[9] That office reported to Mitchell's attorney that Debtor's Chapter 13 case (of the erroneous case number which Debtor had provided to Mitchell's attorney) had been dismissed and that Debtor had no other Chapter 13 case pending.[10]

Mitchell's attorney then called the office of the Clerk of the U.S. Bankruptcy Court (the "Bankruptcy Clerk") to determine whether the records maintained by the Bankruptcy Clerk showed a pending case for Debtor.[11] Mitchell's attorney reported that it was his habit and practice when in need of information regarding a case pending in a state court to call the state court clerk's office. He stated he was consistently able to obtain reliable information regarding case status through such telephonic communication. Mitchell's attorney also testified, however, that he does not regularly practice in bankruptcy court and, in fact, in the few years since he began his practice of law in 1990, Mitchell's attorney had worked on cases on only one or two occasions which had even tangential involvement with bankruptcy court. Therefore, Mitchell's attorney was unaware of the technical and procedural differences between the state courts' docketing systems and the bankruptcy court's docketing system.

The docketing system maintained by the Bankruptcy Clerk allows for a search of the dockets only by name or by case number.[12] A search by case number is reliable. A search by name, however, is not reliable for several reasons including,. *inter alia,* the wide latitude for differences inherent in data entry of names. In the instant case, Debtor's surname, Smith, is very common, which may have further expanded the possibility of an inaccurate search.[13] As a result, while it is *possible* to obtain information over the telephone from personnel in the Clerk's office of the Bankruptcy Court, it is not relied upon by attorneys familiar with bankruptcy law and practice. The reliance an attorney must place on such information is similar to that required in a title search of real estate records.

The report Mitchell's attorney received during a telephonic conversation with personnel in the Bankruptcy Clerk's office was that no case was currently pending in which Leonard Smith was a debtor. Unknown to Mitchell's attorney, that information was inaccurate.[14] Nevertheless, as a result of the oral information Mitchell's attorney received, which Mitchell's attorney related to the state court judge, the state court hearing on the motion for contempt was reset to July 14,

9. The two Chapter 13 Trustees maintain computerized databases of Chapter 13 cases which may be searched using a Debtor's name, case number, Social Security number, or address.

10. The Chapter 13 Trustees have separate offices which are not in the courthouse and, therefore, not in the Bankruptcy Clerk's office. Since May, 1993, personnel in either Chapter 13 Trustee's office has been able to provide information regarding the pendency of any Chapter 13 case; however, for more detailed information, a caller would be referred to the office of the Chapter 13 Trustee to whom a pending case is assigned.

11. Mitchell's attorney was unable to identify with whom he spoke; accordingly, it is likely he spoke with one of more than 100 employees in the clerk's office, and not the Bankruptcy Clerk.

12. The Bankruptcy Clerk's computerized database does not now, and did not in 1993, allow for a search by Social Security number. In 1993, however, it is unlikely that a name-only search would have been performed by a clerk, as the policy of the Clerk then was to require, for a

telephone request, either a case number or, at least, a Social Security number, because the opportunities for providing erroneous information are too great without that corroborating information.

13. In 1993, 25,586 cases (excluding adversary proceedings) were filed in the Northern District of Georgia. Of the 18,446 cases (excluding adversary proceedings) filed in the Atlanta Division of this district in 1993, 298 cases were filed by an individual with the surname of "Smith."

14. The main information telephone number, 331–6886, for the Bankruptcy Court is now an automated system which provides limited information (such as Debtor's name, case number, when the petition was filed, the name and telephone number of the Debtor's attorney, and closing information, if available). In 1993, a caller with a debtor's name and either the case number or the debtor's Social Security number could obtain some information from personnel in the office of the Clerk of Bankruptcy Court. In 1993, such personnel could also refer the call to the automated information system described above.

1993. Notice of the hearing was sent to Debtor.

Debtor's attorney, Mr. Jones, testified that approximately a week to ten days after his first call to Mitchell's attorney June 1, 1993, Mr. Jones again called Mitchell's attorney to confirm that Mitchell's attorney knew of Debtor's bankruptcy case. Mr. Jones testified he had a long, substantive conversation with Mitchell's attorney, including discussing the automatic stay and Mitchell's right to file a proceeding to determine the dischargeability of Debtor's debt to Mitchell. That conversation, however, could have taken place no earlier than Monday, June 7, 1993.[15] The bar date for filing complaints to determine dischargeability was June 7, 1993. Mr. Jones did not allege that he informed Mitchell's attorney of that bar date. Mitchell's attorney testified that he requested, *and that Mr. Jones agreed*, to send a copy of the first page of Debtor's bankruptcy petition or a copy of the § 341 Notice to Mitchell's attorney, either of which would have confirmed the Chapter 7 filing and provided a case number by which Mitchell's attorney could have verified the information from Debtor's attorney and enabled him to obtain other information about the case—such as the bar dates. Mr. Jones does not deny that he agreed to send one of those two documents to Mitchell's attorney and does not deny that he did **not** send either document to Mitchell's attorney.

The hearing on the motion for contempt was held July 14, 1993. Neither Debtor nor Mr. Jones appeared at that hearing. An order holding Debtor in contempt was entered July 16, 1993. Mitchell's attorney had no further contact with Debtor or Debtor's attorney until he received a letter dated September 22, 1993, from Debtor. That letter was apparently prompted by a visit to Debtor's place of business by the Sheriff to enforce the July 16, 1993 contempt order. The letter from Debtor alluded to his pending Chapter 7 bankruptcy case but provided no correct case number or supporting documentation. Debtor again attached a captioned document (the Chapter 13 petition, page 1) from the dismissed 1992 Chapter 13 case.

Finally, on October 1, 1993, Debtor's attorney filed an amended mailing matrix and list of creditors, which added as a creditor Consolidated Electric Supply, Inc., showing David Rutherford as attorney. By letter, Mr. Rutherford informed Debtor's attorney that he, in fact, represented Mitchell Construction Company, Inc. and that it was Mitchell which held a claim against Debtor. Another amendment was filed by Debtor's attorney October 8, 1993, adding as a creditor Mitchell Construction Company, Inc., c/o David Rutherford.

After the filing of the October 1 amendment which provided Mitchell with the first written notice of Debtor's pending Chapter 7 case, letters were exchanged between Mr. Jones and Mr. Rutherford involving Debtor's intention to file a motion for sanctions against Mitchell for violation of the automatic stay. On October 26, 1993, Debtor filed in state court a motion to vacate the contempt order. On November 9, 1993, Mitchell filed a proof of claim in Debtor's Chapter 7 case [16] and a complaint to determine the dischargeability of Mitchell's claim.

Mitchell filed no response to Debtor's motion to vacate the state court contempt order until November 30, 1993. Mitchell's attorney testified in this court that he had no idea that the contempt order was still outstanding. Mitchell's attorney, however, stated no reason why he might believe the order was no longer outstanding. The last action of the court of which Mitchell's attorney had knowledge was the entry of the contempt order. As that order had not been vacated or enforced, it would appear Mitchell's attorney would have no reason to believe the order was no longer valid.

---

15. Debtor's attorney testified the follow-up telephone call was placed 7–10 days after the first call. Seven days after June 1 is June 8. Given the imprecision of Debtor's attorney's memory, however, and according the most favorable inferences to Debtor, the earliest the follow-up call would have occurred was Monday, June 7.

16. The filing of a proof of claim was unnecessary, as a report of no distribution had been filed by the Chapter 7 Trustee April 7, 1993. Such a report indicates that no assets exist for liquidation and distribution to creditors.

On November 29, 1993, the Sheriff arrived at Debtor's place of business and, under the authority contained in the July 16, 1993, contempt order, arrested Debtor. Debtor was incarcerated from approximately 3:30 p.m. November 29, 1993 until November 30, 1993, at 8:00 p.m., after the state court vacated the contempt order at 4:46 p.m. The state court order entered November 30, 1993, vacating its earlier contempt order, stated that Debtor's motion to vacate, filed October 26, 1993, "for the first time, presented proof to the Court of Smith's having filed a Voluntary Petition in the United States Bankruptcy Court on March 3, 1993" (meaning, of course, a pending, active case whose automatic stay applied to the pending state court proceeding).

Debtor's motion for imposition of sanctions against Mitchell and Mitchell's attorney was filed *pro se* in this court December 14, 1993. Debtor's motion to dismiss the adversary proceeding was filed April 5, 1994. As the issue of notice was pivotal to both motions, a consolidated hearing on the notice issue was held.

## DISCUSSION

### Defendant's Motion to Dismiss

The first issue before the court is Defendant's motion to dismiss Mitchell's adversary proceeding because it was not timely filed. Mitchell's original complaint set forth a claim for relief under 11 U.S.C. § 523(a)(2). On August 30, 1994, Mitchell amended its complaint to set forth a claim for relief under 11 U.S.C. § 523(a)(3).

Pursuant to Bankruptcy Rule 4007, the bar date for filing complaints to determine dischargeability under §§ 523(a)(2), (4) or (6) is 60 days from the date first set for a debtor's § 341 meeting of creditors. The bar date in the instant case was June 7, 1993. Plaintiff's complaint was filed November 9, 1993, more than five months after the bar date. Plaintiff did not request or obtain an extension of time on or before the bar date; pursuant to Bankruptcy Rule 9006(c)(2) and 4007(c), the bar date cannot be extended unless a motion to extend is filed before time expires.

Section 523(a)(3) provides that a claim against Debtor is not discharged if it is:
(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit— ...
(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request....

Bankruptcy Rule 4007(b) provides that complaints to determine dischargeability under a subsection of § 523 other than § 523(a)(2), (4) or (6) may be filed at any time, including after the main bankruptcy case has been closed. Thus, a proceeding pursuant to § 523(a)(3) may be filed at any time.

Mitchell contends it did not have actual knowledge of the case in time to file either a complaint to determine dischargeability or a request for extension of time. In the case of *Byrd v. Alton*, 837 F.2d 457 (11th Cir.1988), the Eleventh Circuit Court of Appeals held that if a creditor receives adequate actual notice of the filing of a bankruptcy case, even if that notice does not include notice of the bar date, the creditor has a duty to inquire regarding the relevant dates. In *Byrd v. Alton*, the creditor received written notice of the debtor's bankruptcy case approximately three weeks after the case was filed. The Court held such notice was adequate to afford the creditor a reasonable opportunity to act to protect its rights.

In the instant case, the earliest date upon which Mitchell had the opportunity to receive actual notice of Debtor's case was May 28, 1993, 10 days before the June 7, 1993 bar date. Therefore, the question becomes whether the notice was adequate under the due process standard set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950):

An elementary and fundamental requirement of due process in any proceeding

which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Id.* at 314, 70 S.Ct. at 657.

The notice Mitchell received from Debtor May 28, 1993, provided a case number which Debtor alleged represented the case under which he was protected by the Bankruptcy Code. Upon inquiry, Mitchell's attorney was informed that the case had been dismissed approximately four months earlier. Therefore, because of the misleading information provided by Debtor May 28, the notice to Mitchell was inadequate to provide Mitchell with actual notice of Debtor's bankruptcy case. *See, Coons v. City of Siloam Springs,* 123 B.R. 649 (Bankr.N.D.Okla.1991) (A telephone call from Debtor's wife was too tenuous to establish a duty to check court records).

■ Debtor's attorney testified that he telephoned Mitchell's attorney June 1, 1993, after business hours, spoke to an attorney other than the attorney handling Mitchell's claim against Debtor, and provided that attorney with the correct case number of Debtor's Chapter 7 case. The attorney who spoke to Debtor's attorney testified, however, that no such case number was provided. A review of all the evidence, including the sundry other evidence of the laxity with which Debtor's attorney asserted Debtor's rights and performed Debtor's duties (such as listing in the Schedules and the matrix the names and addresses of *all* Debtor's creditors and **promptly** amending the schedules when an omission was discovered) under the Bankruptcy Code, leads to a conclusion that the testimony of Debtor's attorney that he provided the case number during the call of June 1, 1993, is not credible. A case number, a factor uniquely within the knowledge of Debtor or Debtor's attorney as opposed to knowledge available to an unlisted creditor, is essential in order to provide actual notice of a pending bankruptcy case. Therefore, the telephone call of June 1, 1993, provided no more adequate notice to Mitchell of Debt-

or's case than did Debtor's communication of May 28.

Debtor's attorney testified he made a follow-up telephone call to Mitchell's attorney 7–10 days after the June 1, 1993 telephone call. Seven days after June 1, 1993, is June 8, 1993, one day after the bar date. No telephone call received June 8, 1993, would have provided adequate notice to allow the timely filing of a complaint to determine dischargeability or a request for extension of time.

■ The second telephone call from Debtor's attorney to Mitchell's attorney may have occurred during the relevant period, however. Construing all the evidence most favorably to Debtor, the follow-up telephone call may have been made to Mitchell's attorney Monday, June 7, 1993. Details about the telephone call, such as the time of day, are unknown. Debtor's attorney testified that he provided Mitchell's attorney with Debtor's case number during *that* telephone call but Debtor's attorney also admits he agreed, during that call, to send written documentation of the case number to Mitchell's attorney by fax. No such documentation was sent. Notice of the pendency of a bankruptcy case on the day that time expired, coupled with a promise to send written documentation which was never sent, is inadequate to constitute adequate notice under *Mullane* and § 523(a)(3)(B). Therefore, Mitchell did not receive actual notice of Debtor's bankruptcy case in time for Mitchell to timely file a complaint or a request for extension of time. Mitchell's complaint under § 523(a)(3) will be allowed and Debtor's motion to dismiss DENIED.

**Defendant's Motion for Sanctions**

The second issue before the court is Debtor's motion for imposition of sanctions against Mitchell and Mitchell's attorney pursuant to 11 U.S.C. § 362(h) for willful violation of the automatic stay. On July 16, 1993, as a result of Mitchell's motion for contempt, an order was entered holding Debtor in contempt (the "Contempt Order"). The Contempt Order directed Debtor's arrest and incarceration until he complied with Mitchell's postjudgment discovery requests. That

order ultimately resulted in Debtor's 29–hour incarceration. The Contempt Order was entered during the pendency of Debtor's Chapter 7 case while Debtor was protected by the automatic stay of 11 U.S.C. § 362(a).[17]

■ Mitchell first argues that the contempt proceeding was not a proceeding to which the automatic stay applies, citing *Rook v. Rook,* 102 B.R. 490 (Bankr.E.D.Va.1989), *aff'd,* 929 F.2d 694 (4th Cir.1991). In the *Rook* case, the court held that matters not bearing upon a debtor's economic status are not subject to the automatic stay. Included in such matters would be a contempt action in which the court imposed sanctions to vindicate the court's dignity, such as incarceration for a specified period of time as punishment for failure to obey a court order. The court continued, however, that a contempt proceeding instituted to force payment of a financial obligation **does** constitute violation of the automatic stay.

In the instant case, the Contempt Order was entered to force Debtor to respond to postjudgment interrogatories by Mitchell in an effort to collect its judgment against Debtor. The contempt proceeding, therefore, had a significant bearing on Debtor's economic status and was subject to the automatic stay. The purpose of the Contempt Order is further evidenced by the state court's prompt vacation of that Order when provided with documentation of Debtor's pending bankruptcy case. Therefore, Mitchell's argument that the automatic stay is not applicable is without merit. *See, In re Atkins,* 176 B.R. 998 (Bankr.D.Minn.1994).

■ The more critical issue is whether Mitchell's violation of the automatic stay was willful. A violation of the automatic stay which occurs without knowledge of a pending bankruptcy case does not constitute a willful violation which will subject a creditor to sanctions under § 362(h). *In re Esposito,* 154 B.R. 1011 (Bankr.N.D.Ga.1993), and cases cited therein. Failure to take affirma-tive action to undo an innocent violation of the automatic stay, however, may constitute a willful violation. *Dubin v. Jakobowski (In re Grosse),* 96 B.R. 29 (E.D.Pa.), *aff'd w/o opinion,* 879 F.2d 856 (3d Cir.), *cert. denied,* 493 U.S. 976, 110 S.Ct. 501, 107 L.Ed.2d 504 (1989); *In re Bennett,* 135 B.R. 72 (Bankr. S.D.Ohio 1992); *Commercial Credit Corp. v. Reed,* 154 B.R. 471 (E.D.Tex.1993).

■ In the instant case, without dispute, Mitchell had actual, formal, written notice of Debtor's bankruptcy case when Mitchell's attorney received Debtor's October 1, 1993, amendment to the bankruptcy petition. Nevertheless, Mitchell did nothing to undo the Contempt Order entered by the state court. Mitchell filed no motion to vacate; Mitchell failed to contact the state court and provide it with verification that Debtor had a bankruptcy case pending; Mitchell failed to join in Debtor's motion to vacate, filed October 26, 1993; Mitchell failed even to respond to the motion to vacate until after Debtor had been arrested—and then responded that it lacked sufficient information to admit or deny the allegations in Debtor's motion to vacate!

■ Under § 362(h), a debtor has the burden of providing a creditor with adequate actual notice of a pending bankruptcy case. When a creditor receives such actual notice, the burden is then on the creditor to assure that the automatic stay is not violated or, if it has been violated prior to receipt of actual notice, the burden is on the creditor to reverse any such action taken in violation of the stay. Mitchell failed to sustain that burden when it failed to take any action to nullify the Contempt Order.

■ Mitchell's attorney testified that he was unaware that the Contempt Order was still outstanding.[18] He did not testify, however, that he made any inquiry of the state court about the status of the Contempt Order. Indeed, such inquiry would have re-

---

**17.** The automatic stay is effective whether or not the creditor has actual notice of the bankruptcy case. *In re Lile,* 103 B.R. 830 (Bankr.S.D.Tex. 1989). Actions taken in violation of the automatic stay are void. *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306 (11th Cir.1982).

**18.** Mitchell's attorney stated no reason why he believed the Contempt Order was no longer outstanding.

vealed that the Contempt Order was still valid and outstanding. Mitchell's attorney's self-serving explanation regarding his failure to act to nullify the Contempt Order is no defense. Mitchell and its attorney willfully violated the automatic stay by failing to act to nullify the Contempt Order and they are, therefore, subject to sanctions for such willful violation. *Atkins,* 176 B.R. 998.

■ A mitigating factor to be considered in relation to willful violation of the automatic stay, however, may be the failure of Debtor's attorney to pursue Debtor's rights. *Coons v. City of Siloam Springs,* 123 B.R. 649 (Bankr. N.D.Okla.1991). In the instant case, both Mitchell's attorney and Debtor's attorney failed to act with the due diligence expected of a professional which would have prevented the unfortunate episode of Debtor's incarceration. If at any time during early June, 1993, Debtor's attorney had provided Mitchell's attorney with the written documentation requested by Mitchell's attorney and promised by Debtor's attorney, the Contempt Order would never have been entered. If Debtor's attorney had provided such written documentation to the state court or had filed a Plea of Bankruptcy in the state court, the Contempt Order would never have been entered. If either Debtor or Debtor's attorney had appeared at either the June 2, 1993 hearing or the July 14, 1993 hearing in state court and advised the court of the pending bankruptcy case, the Contempt Order would never have been entered. If Debtor's attorney had promptly filed, in June, 1993, an amendment to Debtor's schedules adding Mitchell as a creditor, the Contempt Order would never have been entered. If Debtor's attorney had sought expedited consideration of the motion to vacate the Contempt Order, that order would have been promptly vacated and the arrest of Debtor would not have occurred.

Similarly, if at any time after May 28, 1993, Mitchell's attorney had himself checked the records in the Bankruptcy Clerk's office to ascertain whether Debtor had a bankruptcy case pending (rather than relying on oral information from a non-professional), the Contempt Order would never have been entered. If Mitchell's attorney had promptly filed a response to Debtor's motion to vacate the Contempt Order or had filed its own motion to vacate, the arrest of Debtor may not have occurred. Mitchell's attorney failed to recognize his own lack of expertise in bankruptcy law and failed to seek the advice and counsel of an attorney with bankruptcy expertise who would have instructed him in the due diligence duties of a creditor's attorney. Apparently, Mitchell's attorney also failed to perform any legal research of the case law to ascertain his duty under the Bankruptcy Code. Mitchell's attorney appears to have adopted his client's animosity towards Debtor and concluded, without foundation, that he had no obligation to take affirmative action to prevent execution of the Contempt Order.

Both the attorneys—for Debtor and for Mitchell—acted unprofessionally and created a dispute which never should have come before this court. Debtor was subjected to the indignity of incarceration because the attorneys were too careless, too neglectful, too intransigent and too busy to take action which would have prevented that occurrence. The duty to act was upon Mitchell and Mitchell's attorney and the failure to act subjects them to sanctions for willful violation of the automatic stay. The repeated failures of Debtor and Debtor's attorney, however, provide grounds for imposing lesser sanctions than would be appropriate if Debtor and Debtor's attorney had diligently performed their duties.

■ Evidence was presented to show Debtor's damages as a result of Mitchell's willful violation of the automatic stay. Debtor was subjected to the indignity of a 29–hour incarceration. Debtor's business was disrupted and his reputation may have been damaged. Debtor incurred attorneys fees to file and prosecute the motion to vacate the Contempt Order. Debtor incurred more attorney fees to file and prosecute the motion for sanctions. As discussed above, however, the damages Debtor has suffered could have been avoided entirely by diligent action by Debtor and diligent professional action by Debtor's attorney. Sanctions in the amount of $5,000.00 are appropriate. Accordingly, it is hereby

ORDERED that Debtor's motion to dismiss the adversary proceeding filed by Mitchell is DENIED. It is further

ORDERED that Debtor's motion for imposition of sanctions for willful violation of the automatic stay is GRANTED. Sanctions in the amount of $5,000 are imposed against Mitchell and Mitchell's attorney, jointly and severally. Said sanctions shall be paid into the Registry of the Court in good funds within fourteen (14) days of the date of entry of this order and a certificate of such payment shall be filed with the Clerk, U.S. Bankruptcy Court contemporaneously with such payment. Said sanctions will be disbursed only upon further order of this court: If Debtor prevails in Mitchell's adversary proceeding to determine the dischargeability of Mitchell's claim, the funds in the Registry will be disbursed to Debtor; if Mitchell prevails in said adversary proceeding, the funds in the Registry will be disbursed to Mitchell as payment on its nondischargeable debt.

The Clerk, U.S. Bankruptcy Court, is **directed to serve a copy of this order upon** Debtor; Debtor's attorney; Mitchell Construction Company, Inc. and Mitchell's attorney; the Chapter 7 Trustee, and the U.S. Trustee.

IT IS SO ORDERED.