In re Johnny Darrell TIPTON, Debtor.

Johnny Darrell Tipton, Plaintiff,

v.

J. Marty Adkins, Esquire, and Teresa Tipton Bruner, Defendants.

Bankruptcy No. 99–21551.
Adversary No. 99–2043.

United States Bankruptcy Court,
E.D. Tennessee.

Feb. 7, 2000.

Dean Greer, Dean Greer & Associates, Kingsport, for Johnny Darrell Tipton.

J. Marty Adkins, Adkins, Elkins & Hunnicutt, Norton, VA, Pro Se.

### MEMORANDUM

MARCIA PHILLIPS PARSONS, Bankruptcy Judge.

In this adversary proceeding, the debtor, Johnny Darrell Tipton, seeks a permanent injunction enjoining his former spouse, Teresa Tipton Bruner, and her attorney, J. Marty Adkins, from undertaking collection efforts to force payment by the debtor of certain marital obligations. The debtor also seeks an award of damages from Mr. Adkins based on an alleged violation of the automatic stay in connection with Mr. Adkins' commencement of contempt proceedings against the debtor in state court on behalf of Ms. Bruner. Mr. Adkins has moved to dismiss the complaint, asserting that this court has no jurisdiction over the defendants because both are residents of Virginia. Mr. Adkins also contends that no violation of the stay has occurred because he did not have knowledge of the bankruptcy at the time he commenced the contempt action against the debtor and because a finding of contempt by the state court is a prerequisite to any request by Ms. Bruner for spousal support. For the reasons discussed below, the motion to dismiss [1] will be denied in all respects. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(O).

### I.

The debtor filed for chapter 7 relief on June 15, 1999. In the complaint initiating this adversary proceeding filed on September 20, 1999, the debtor alleges that Ms. Bruner was scheduled as a creditor and received notice of the bankruptcy filing. The complaint further alleges that on September 14, 1999, the debtor was served with a Notice and Motion advising him that on September 20, 1999, Mr. Adkins as counsel for Ms. Bruner "will move the Circuit Court of Scott County, Virginia to hold the [debtor] in contempt and to fine and/or imprison him for his failure to comply with the Final Decree of this Court." According to the complaint, the "Final Decree" referenced in the Notice and Motion was the Separation and Property Settlement Agreement entered into by the debtor and Ms. Bruner on October 9, 1995. This agreement, *inter alia*, requires the debtor to be solely responsible for certain credit card debt owed to Visa and Master-Card by the parties and to hold Ms. Bruner harmless from any liability thereon.

The complaint asserts that after the debtor was served with the Notice and Motion, his attorney faxed a letter to Mr. Adkins on the morning of September 16, 1999, advising him of the debtor's bankruptcy case and that "several messages were left at the attorney's office concerning the fact that Debtor was in bankruptcy." The complaint further states that "attempts were made to bring J. Marty Adkins, Esquire aware of the fact that his actions may well violate 11 U.S.C. § 362(a) and that the automatic Stay still continued to apply" and that "several attempts were made to obtain the agreement of the Defendants to continue or suspend the [contempt] hearing" but that "the Defendant

1. Mr. Adkins cites no specific rule of civil or bankruptcy procedure but presumably his motion is pursuant to Fed.R.Civ.P. 12(b)(2) ("lack of jurisdiction over the person") and

(6) ("failure to state a claim upon which relief can be granted") made applicable to bankruptcy adversary proceedings by Fed. R. Bankr.P. 7012(b).

R.[sic] Marty Adkins, Esquire at no time responded to several different faxed messages and phone calls." The complaint notes that the deadline to determine the dischargeability of debts pursuant to 11 U.S.C. § 523(a)(15) ran September 13, 1999.

In conjunction with the commencement of the adversary proceeding, the debtor filed a "MOTION FOR TEMPORARY RESTRAINING ORDER AND SHOW CAUSE HEARING FOR SANCTIONS" requesting that the court enter a temporary restraining order ("TRO") preventing the defendants from prosecuting the contempt motion in the Circuit Court of Scott County, Virginia. At an emergency hearing held on September 20, 1999, this court granted the motion, issued a TRO, and scheduled a hearing for September 30, 1999, on the issue of whether the TRO should be converted into a preliminary injunction. By agreement of the parties, the September 30, 1999 hearing was continued until October 5 and then again to October 19, 1999. At the October 19 hearing, the court converted the TRO into a preliminary injunction pending the final hearing in this proceeding. An order to this effect was entered on December 7, 1999, *nunc pro tunc* to October 19, 1999. Neither Ms. Bruner nor Mr. Adkins appeared at the September 20 and October 19 hearings.

On November 26, 1999, Mr. Adkins filed the "SPECIAL APPEARANCE—MOTION TO DISMISS" pending before the court. In the motion to dismiss, Mr. Adkins alleges that prior to instituting the contempt action against the debtor, he telephoned "all Virginia Districts" and "all Tennessee Bankruptcy Districts" to ascertain if the debtor had filed for bankruptcy relief since Ms. Bruner advised him that the debtor had filed "but . . . did not have a copy of any documents." Mr. Adkins states in the motion that all of the bankruptcy courts which he telephoned advised him that no bankruptcy case had been filed by the debtor. Mr. Adkins admits that upon the filing of the contempt motion, he learned of the debtor's pending case in the Northeastern Division of the Eastern District of Tennessee.

Mr. Adkins also asserts in the motion to dismiss that neither he nor Ms. Bruner violated "any Bankruptcy Rules" by filing the contempt motion since "[t]he motion to have Mr. Tipton held in contempt does not obligate Mr. Tipton to make any payments in contravention of the bankruptcy order." Mr. Adkins attaches to the motion to dismiss a copy of "an amended motion which requests spousal support and the petitioner represents to the Court that the request for spousal support should have been included in the original motion as it was the intent of Ms. Bruner to receive spousal support; and, in order for her to receive spousal support Mr. Tipton had to be found in contempt before a request for spousal support could be made." Lastly, Mr. Adkins asserts that "[t]he petitioner nor Ms. Bruner are subject to the jurisdiction of this court in that both are residents of Virginia and have taken no action in Tennessee that would give this Court jurisdiction."

In his response in opposition to the motion to dismiss, the debtor asserts that he is without sufficient information to admit or deny Mr. Adkins' allegation that he was unable to determine prior to the filing of the contempt motion if the debtor had a bankruptcy case pending. The debtor notes, however, that Mr. Adkins had knowledge of the bankruptcy as of September 15, 1999, that Ms. Bruner, as a scheduled creditor, had notice of the bankruptcy and that Ms. Bruner's prior counsel had notice. The debtor disputes Mr. Adkins' contention that the contempt motion did not violate the automatic stay, noting that at the time the motion was filed, the debtor's only obligation to Ms. Bruner was for payment of the marital debts under their divorce order and thus, "the only apparent purpose for seeking incarceration for his failure to pay ordered debts was to secure the payments of those debts." The debtor also challenges Mr. Adkins' asser-

tion that the debtor needed to be found in contempt before a request for spousal support could be made by Ms. Bruner, noting that no legal authority is cited for such a proposition. With respect to Mr. Adkins' jurisdiction argument, the debtor again references the defendant's failure to cite any legal authority and asserts that this court has personal jurisdiction over the defendants, notwithstanding their Virginia residency.

## II.

The plaintiff bears the burden of establishing that personal jurisdiction exists. *See, e.g., Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991). When considering a Rule 12(b)(2) motion based upon written submissions as in this case, the plaintiff must only make a *prima facie* showing that personal jurisdiction exists. In deciding the issue, the court construes the pleadings and any affidavits in a light most favorable to the plaintiff. *Id. See also Serras v. First Tennessee Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989). The standard for considering a Rule 12(b)(6) motion to dismiss for failure to state a claim is quite similar, except when considering this motion, the court also accepts as true the factual allegations in the complaint and must determine that the plaintiff undoubtedly could prove no set of facts in support of his claims that would entitle him to relief before such a motion will be granted. *See, e.g., Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir.1993). The burden of demonstrating that a complaint does not state a claim is on the moving party. *See, e.g., Riumbau v. Colodner (In re Colodner),* 147 B.R. 90, 92 (Bankr. S.D.N.Y.1992).

## III.

The court will first address Mr. Adkins' assertion that he is not subject to the jurisdiction of this court because he has no contacts with the state of Tennessee. Mr. Adkins and Ms. Bruner were served with process by first class mail pursuant to Fed. R. Bankr.P. 7004(b) and (d) which authorize nationwide service of process in bankruptcy cases and adversary proceedings. *See* Fed. R. Bankr.P. 7004(d) ("The summons and complaint and all other process except a subpoena may be served anywhere in the United States."). Subdivision (f) of Rule 7004 provides that:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

Thus, under Rule 7004(f), a court has personal jurisdiction over a defendant if three requirements are met: (1) service of process has been made in accordance with Rule 7004 of the Federal Rules of Bankruptcy Procedure or Fed.R.Civ.P. 4; (2) the action is "a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code"; and (3) "exercise of jurisdiction is consistent with the Constitution and the laws of the United States."

The court file reflects that on September 22, 1999, Dean Greer, attorney for the plaintiff in this adversary proceeding, filed two certificates of service evidencing that copies of the summons and complaint were served upon the defendants on September 20, 1999, by "[r]egular, first class United States mail, postage fully prepaid." No challenge to the sufficiency of service of process has been made so the court presumes that service of process met the requirements of Fed. R. Bankr.P. 7004 or Fed.R.Civ.P. 4. Furthermore, any insufficiency has been waived by Mr. Adkins due to his failure to raise the issue in his motion to dismiss. *See* Fed.R.Civ.P.

12(h)(1) as incorporated by Fed. R. Bankr.P. 7012(b). Accordingly, the first requirement for the exercise of personal jurisdiction over the defendants, effective service of process, has been met.

■ The second requirement is that the proceeding in which jurisdiction is sought must be "a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code." This language mirrors the grant of subject matter jurisdiction over bankruptcy matters given the district court in 28 U.S.C. § 1334(a) and (b). *See HOC, Inc. v. McAllister (In re McAllister)*, 216 B.R. 957, 963 (Bankr.N.D.Ala.1998). Under these subsections, "federal district courts have original jurisdiction over all cases under title 11 of the United States Code and all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Kirk v. Hendon (In re Heinsohn)*, 231 B.R. 48, 55 (Bankr.E.D.Tenn. 1999). Thus, in order for this court to exercise personal jurisdiction over the defendants, it must have subject matter jurisdiction over the action. *In re McAllister*, 216 B.R. at 963.

■ The subject matter jurisdiction requirement is easily met in this case. "[Section] 1334 grants jurisdiction to the district court over four types of bankruptcy matters: (1) cases under title 11, *i.e.*, the bankruptcy case itself; (2) proceedings arising under title 11; (3) proceedings arising in cases under title 11; and (4) proceedings related to cases under title 11." *In re Heinsohn*, 231 B.R. at 55–56 (citing *Beneficial Nat. Bank USA v. Best Receptions Systems, Inc. (In re Best Reception Systems, Inc.)*, 220 B.R. 932, 942 (Bankr. E.D.Tenn.1998)). The first three categories of jurisdiction are denominated by 28 U.S.C. § 157(b) as "core proceedings." It is well settled that actions to recover damages for stay violations pursuant to 11 U.S.C. § 362(h) and to enjoin further violations are core proceedings. *See, e.g., Carabetta Enter., Inc. v. City of Asbury Park (In re Carabetta Enter., Inc.)*, 162 B.R.

399, 404 (Bankr.D.Conn.1993)("Actions to enjoin or prosecute violations of the automatic stay, or to determine the applicability of the automatic stay, are core proceedings."); *In re Depew*, 51 B.R. 1010, 1013–14 (Bankr.E.D.Tenn.1985)("[M]atters concerning the integrity and efficacy of the automatic stay as a fundamental debtor protection are unquestionably matters integral to 'the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power.' "). Therefore the court has subject matter jurisdiction over this adversary proceeding.

The final issue for the court to consider in its determination of personal jurisdiction is whether "exercise of jurisdiction is consistent with the Constitution and laws of the United States." Presumably this is where Mr. Adkins' residency or minimum contacts argument is pertinent although not articulated as such in his motion.

■ Personal jurisdiction in federal question cases is a matter of federal law, to be governed by the due process standards of the Fifth Amendment rather than the Fourteenth Amendment. *Catrone v. Ogden Suffolk Downs, Inc.*, 647 F.Supp. 850, 852 (D.Mass.1986). The majority of courts to consider this issue, including the Sixth Circuit Court of Appeals, have concluded that under the Fifth Amendment, "federal courts can constitutionally exercise personal jurisdiction over anyone found within the sovereign territory of the United States." *Id.* at 853. In the case of *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320 (6th Cir.1993), the Sixth Circuit considered whether the district court had personal jurisdiction over the defendants pursuant to section 27 of the Securities Exchange Act of 1934 which authorizes nationwide service of process for cases brought under the Act. The defendants argued that the court was without *in personam* jurisdiction because they had no minimum contacts with the forum state. The Sixth Circuit rejected this argument,

affirming its 1981 decision in *Haile v. Henderson Nat'l Bank:*

> In an action where service of process is effected pursuant to a federal statute which provides for nationwide service of process, the strictures of *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), do not apply.
>
> . . . .
>
> The process authorized by 1692 is not "extra-territorial" but rather nationwide. . . . As such, the minimum contacts analysis, as a limitation on state extra-territorial power, is simply inapposite.

*Ryan,* 985 F.2d at 1330 (quoting *Haile v. Henderson Nat'l Bank,* 657 F.2d 816, 824–26 (6th Cir.1981)). The *Ryan* court quoted the Ninth Circuit for the proposition that "[w]here a federal statute . . . confers nationwide service of process, 'the question becomes whether the party has sufficient contacts with the United States, not any particular state.' " *Id.* at 1330 (quoting *Sec. Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1315 (9th Cir.1985)).

Although *Ryan* did not involve the bankruptcy nationwide service of process statute, the courts which have considered the issue in the bankruptcy context have reached the same conclusion. For example, in *Fed. Fountain, Inc. v. KR Entertainment (In re Fed. Fountain, Inc.),* 165 F.3d 600 (8th Cir.1999), the chapter 7 trustee sued an out-of-state corporation, which moved to dismiss for lack of personal jurisdiction. In ruling on the question, the Eighth Circuit framed the issue as "whether personal jurisdiction may constitutionally be exercised over a defendant in a federal court only if there are sufficient contacts between that defendant and the state in which he or she is expected to appear." *Id.* at 601. Observing that "Fed. R. Bankr.P. 7004(d) is a constitutional exercise of congressional authority," the court noted that the Supreme Court has held that "there is 'nothing in the Constitution which forbids Congress to enact that a federal trial court shall have the power to bring before it all the parties necessary to its decision.' " *Id.* at 602 (quoting *U.S. v. Union Pac. R.R. Co.,* 98 U.S. 569, 604, 25 L.Ed. 143 (1878)).

> We think, in sum, that the fairness that due process of law requires relates to "the fairness of the exercise of power by a particular sovereign, . . . and there can be no question . . . that the defendant . . . has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States court."

*Id.* (quoting *Fitzsimmons v. Barton,* 589 F.2d 330, 333 (7th Cir.1979)).

Similarly, in *Owens–Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.),* 124 F.3d 619 (4th Cir.1997), the court concluded that Rule 7004 provides a basis for personal jurisdiction over an out-of-state corporation.

> On the topic of whether the exercise of personal jurisdiction over Rapid is consistent with the Constitution and the laws of the United States, the question of whether Rapid had minimum contacts with West Virginia is irrelevant. This is so because when an action is in federal court on "related to" jurisdiction, the sovereign exercising authority is the United States, not the individual state where the federal court is sitting. [Citations omitted.] Rather, we need only ask whether Rapid has minimum contacts with the United States such that subjecting it to personal jurisdiction does not offend the Due Process Clause of the Fifth Amendment to the United States Constitution.

*Id.* at 630. *See also Diamond Mortgage Corp. of Illinois v. Sugar,* 913 F.2d 1233, 1244 (7th Cir.1990) (contacts between defendant and state have no bearing on personal jurisdiction issue in bankruptcy adversary proceeding); *Donald G. Atteberry DVM, P.A. v. Barclays Bank (In re Donald G. Atteberry DVM, P.A.),* 159 B.R. 1, 5 (D.Kan.1993) ("Arising under Title 11, this case is one of federal question, 28 U.S.C.

§ 1334, and the nationwide service of process provisions of Bankruptcy Rule 7004(d) apply. Consequently, the bankruptcy court correctly focused on the defendant's contacts with the United States rather than Kansas."); *NationsBank N.A. v. Macoil, Inc. (In re Med–Atlantic Petroleum Corp.)*, 233 B.R. 644, 653 (Bankr.S.D.N.Y. 1999) ("[T]he U.S. Constitution requires only that the defendant have the requisite 'minimum contacts' with the United States, rather than with New York."); *Wallace v. Milrob Corp. (In re Rusco Indus., Inc.)*, 104 B.R. 548, 552 (Bankr.S.D.Ga.1989) ("The focus of the due process inquiry under the Fifth Amendment is the defendant's aggregate contacts with the United States, not contacts with the State wherein the federal court happens to be located."). *Cf. Republic of Panama v. BCCI Holdings (Luxembourg), S.A.*, 119 F.3d 935, 946 (11th Cir.1997) (even in context of nationwide service of process, court must balance the burdens imposed on the individual defendant against the federal interest involved in the litigation).

 In accordance with the directive of the Sixth Circuit in *Ryan* and the persuasive authority of the courts who have considered this precise issue, the court concludes that the "exercise of jurisdiction" over the defendants in this action is "consistent with the Constitution and laws of the United States" if the defendants have minimum contacts with the United States. Based on the unrefuted allegation in the motion that the defendants are residents of Virginia, the court concludes that minimum contacts with the United States have been established. Having concluded that the three requirements to establish personal jurisdiction over the defendants have been satisfied, the debtor has met his burden concerning the existence of personal jurisdiction over the defendants.

## IV.

The court turns next to Mr. Adkins' assertion that the automatic stay has not been violated because (1) he did not know of the bankruptcy at the time the contempt proceedings were instituted; and (2) the contempt motion does not obligate the debtor to make any payments but was simply a prerequisite to any award by the state court of spousal support to Ms. Bruner. The latter contention will be addressed first.

A copy of the contempt motion in question is attached to the complaint filed in this proceeding. The motion is entitled "NOTICE AND MOTION" and states:

> TAKE NOTICE that on September 20, 1999 at the hour of 9:30 a.m., ... the undersigned will move the Circuit Court of Scott County, Virginia to hold the [debtor] in contempt and to fine and/or imprison him for his failure to comply with the Final Decree of this Court. Plaintiff will further move for an award of her attorney's fees and costs expended in this proceeding.

The debtor asserts in the complaint that the alleged "failure to comply with the Final Decree" was a reference to the debtor's obligation under the parties' separation and property settlement agreement to pay certain marital debts of the parties. In his motion to dismiss, Mr. Adkins references an amended motion for contempt[2] which in addition to requesting that the debtor be held in contempt, also requests that the court award Ms. Bruner spousal support from the debtor. Mr. Adkins states in his motion to dismiss that "the request for spousal support should have been included in the original motion as it was the intent of Ms. Bruner to receive spousal support; and, in order for her to receive spousal support Mr. Tipton had to be found in contempt before a request for spousal support could be made."

A copy of the debtor's and Ms. Bruner's "SEPARATION AND PROPERTY SETTLEMENT AGREEMENT" is attached

---

**2.** The court is unaware if the amended motion has been either filed or served since it does not contain a clerk's stamp or certificate of service.

to the complaint. The agreement does make it clear that the wife is waiving any claim for alimony or support in return for the debtor's assumption of certain marital debts of the parties and the fulfillment of this assumption.[3] However, there is nothing in the agreement that would support Mr. Adkins' contention that a finding of contempt is necessary in order for Ms. Bruner to request spousal spouse. Since the agreement clearly states that the waiver of support is conditioned on the debtor's obligation to pay certain debts, it would appear that a simple allegation that the debtor has not fulfilled these obligations would be sufficient for the court to revisit the support issue. Furthermore, the agreement states that it is to be construed in accordance with Virginia state law and the court is unable to find authority under Virginia law, nor has Mr. Adkins cited any such authority, which would support the assertion that a contempt ruling against the debtor is a prerequisite for a support award by the state court. Accordingly, Mr. Adkins' contention that the contempt citation did not violate the automatic stay because it was simply a preliminary step in an award of spousal support is without merit.

■ Regardless of the alleged intent behind the contempt motion, an objective reading of the motion leads one to the inescapable conclusion that the debtor was being threatened with a fine and imprisonment unless he paid his prepetition marital obligations. As such, the motion and the contempt proceeding was a violation of the automatic stay provisions of the Bankrupt-

cy Code. *See* 11 U.S.C. § 362(a) ("[A] petition ... operates as a stay, applicable to all entities, of—(1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor ... to recover a claim against the debtor that arose before the commencement of the case under this title;" ... "[and] (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. ...") *See also, e.g., Kearns v. Orr (In re Kearns)*, 168 B.R. 423 (D.Kan.1994)(to the extent complaint alleged that contempt proceedings had collection motive, complaint against former spouse and attorney stated cause of action for violation of automatic stay); *Lori v. Lori (In re Lori)*, 241 B.R. 353 (Bankr.M.D.Penn.1999)(petition to hold chapter 7 debtor in contempt of support provisions of marital settlement was not excepted from automatic stay and thus violated stay); *Sermersheim v. Sermersheim (In re Sermersheim)*, 97 B.R. 885 (Bankr.N.D.Ohio 1989) (former wife and her attorney were in violation of stay and former husband was entitled to recover damages incurred in defending state court contempt motion); *In re Tweed*, 76 B.R. 636 (Bankr.E.D.Tenn.1987) (wife's petition for contempt in state court was violation of automatic stay by wife and her attorney).

■ Although subsection (b)(2)(A)(ii) of § 362 does provide an exception to the automatic stay in proceedings for "the establishment or modification of an order for alimony, maintenance, or support," such an exception would only apply to the portion

---

**3.** In *section 1* of the agreement entitled "REAL PROPERTY AND SPOUSAL SUPPORT," the debtor agrees to quitclaim his interest in the parties' mobile home and land to his wife and agrees to pay the debt on the property. The agreement further provides that "[i]n consideration of the Husband transferring all his right, title and interest in said property to the Wife and in consideration of the Husband assuming full responsibility on the remaining obligations found throughout this Agreement, the Wife waives any and all claim or right that she may now, or hereafter,

may have against the Husband for alimony, maintenance and support and does hereby expressly release the Husband from any and all claims for alimony or maintenance and support, if the Husband fulfills his obligations herein." In *section 8* of the agreement, the debtor agrees to be solely responsible for the debts owed by the parties to Visa and Master-Card and to hold his wife harmless thereon. The agreement states: "It is understood that this debt is being assumed by the Husband on the expressed condition of the spousal support waiver of the Wife found herein."

of the amended contempt motion requesting an award of spousal support and does not otherwise permit the contempt aspect of the motion. *See In re Lori,* 241 B.R. at 355 (exception applies only to the establishment of support orders and does not extend to the commencement or continuation of a proceeding to enforce such orders).

With respect to Mr. Adkins' assertion that he did not have notice of the bankruptcy case when he commenced the contempt action, such evidence is relevant only to willfulness of the defendants' actions, not to whether a violation of the automatic stay has in fact occurred. "The automatic stay is effective upon the filing of the bankruptcy petition. [Citations omitted.] It does not require actual notice to be effective." *In re Lile,* 103 B.R. 830, 836 (Bankr.S.D.Tex.1989). If a creditor postpetition seeks to collect a prepetition debt, a violation of the stay has occurred, even if the creditor did not have notice of the bankruptcy at the time of the prohibited act. *See Clayton v. King (In re Clayton),* 235 B.R. 801, 807 (Bankr.M.D.N.C. 1998)("[A] technical violation occurs when a creditor violates the provisions of § 362(a) without knowledge that an active bankruptcy case is pending."). However, "[a] violation of the automatic stay by itself does not automatically warrant an award of monetary damages or the imposition of sanctions." *In re Lile,* 103 B.R. at 836. Section 362(h) of the Code requires the court to award damages when an individual has been injured by a willful stay violation. "A violation of the automatic stay which occurs without knowledge of a pending bankruptcy case does not constitute a willful violation which will subject a creditor to sanctions under § 362(h)." *Mitchell Constr. Co. v. Smith (In re Smith),* 180 B.R. 311, 319 (Bankr.N.D.Ga.1995).

Nonetheless, failure to take affirmative action to undo an innocent violation of the automatic stay may constitute a willful violation. *Id.* In the *Smith* case, after a creditor without notice of the debtor's bankruptcy filing instituted contempt proceedings against the debtor in state court, the creditor's attorney was notified of the debtor's bankruptcy case. Upon receiving this knowledge, the creditor and its attorney chose to go forward with the contempt hearing and the debtor was incarcerated. Thereafter the debtor filed a motion for sanctions against the creditor and its attorney in bankruptcy court, which motion was granted. The court stated that "[w]hen a creditor receives such actual notice [of a pending bankruptcy case], the burden is then on the creditor to assure that the automatic stay is not violated or, if it has been violated prior to receipt of actual notice, the burden is on the creditor to reverse any such action taken in violation of the stay." *Id.* at 319. *See also In re Lile,* 103 B.R. at 837 ("Once a party is put on notice of a bankruptcy filing, he is under a duty to seek further information which should reveal the applicability and scope of the automatic stay. [Citation omitted.] ... The creditor takes the risk of being assessed for damages if he fails to obtain clarification from the bankruptcy court.").

The complaint in this proceeding alleges that even after the defendants were placed on notice of the debtor's bankruptcy case, they failed to halt the contempt proceedings which they had initiated. Accordingly, the complaint states a cause of action for willful violation of the automatic stay under § 362(h) of the Bankruptcy Code.

V.

In light of the foregoing, the motion to dismiss will be denied. An order to that effect will be entered contemporaneously with the filing of this memorandum opinion.